## THE OLDER.

District Court, W. D. New York.
Sept. 10, 1932.

See, also, 36 F.(2d) 281.

Harry J. Kelly, of Buffalo, N. Y., and Single & Single, of New York City (Harry J. Kelly, of Buffalo, N. Y., Forrest E. Single and Edward J. Keane, both of New York City, of counsel), for libelant.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y., and Haight, Smith, Griffin & Deming, of New York City (Her-

bert K. Stockton, of New York City, of counsel), for respondent.

ADLER, District Judge.

The Norwegian steamship Older, under a charter party executed by the libelant, loaded a cargo of 29,120 bags of sugar at Cardenas, Cuba, to be delivered at Toronto, Canada. The charter party contained the following guaranty: "Owners guarantee that the steamer can proceed through all rivers and canals to reach Toronto with the above cargo."

The vessel proceeded on its course without incident until it arrived in the vicinity of Montreal. At Montreal, under instructions from the owner of the vessel, Mr. Hancock, of Hancock & Hilton, Limited, ship brokers and agents, engaged the Atlantic Engineering Company, Limited, to install canal gear on the vessel. This canal gear consisted of two landing booms with cables attached and a wire rope compressor. The letter of instructions from the ship's owner in Norway to Hancock and Hilton contained this sentence: "We understand that the vessel will be supplied with a compressor and some other small things to enable her to pass through the various canals."

It appears from the correspondence that the Hancock firm was also employed for other purposes, but it is clear that, in making the contract for the installation of the canal gear, the Hancock firm was acting for and under the instructions of the owner of the vessel.

In order to install the landing booms, which are part of the canal gear, a workman in the employ of the contractor burned holes for the eye bolts in the bulkhead of the forecastle and in the lower bridge bulkhead. This burning was done by means of an oxyacetylene burner. No special precautions were taken to catch or destroy the sparks thrown out by the acetylene burner. It appears that, when an acetylene torch is used where there is chance of the sparks setting fire to anything inflammable in the vicinity, a shield is interposed or a fire extinguisher or buckets of water are kept at hand for immediate use, if necessary. In this case the bulkhead in which the holes were being drilled was within four feet of the edge of No. 1 hatch in which the fire was started, and it was about eight feet from the holes to the corner of the hatch. There is testimony in this case that sparks from an acetylene burner will ignite inflammable material after flying a distance of twenty-five feet.

The hatches were covered while the burning was going on, but there is testimony to the effect that for some reason the mate of the ship had removed the tarpaulin which covered the hatches. It would be possible, therefore, for some sparks to have gotten down into the hold through the cracks in the hatch covers. I find after consideration of the evidence that the fire was not caused by spontaneous combustion, and that it was caused by sparks from the acetylene burner getting into the hold and reaching the jute bags filled with sugar which constituted the cargo of the ship, one hundred pounds to a bag.

The fire was very promptly discovered, and in the first attempts to put it out the fire hose on the ship was used. This was found to be leaky. Assistance was summoned from the dock, and local fire apparatus arrived, and the fire was extinguished within half an hour. It was confined to the bags of sugar in compartments No. 1 and No. 2; 3,689 bags showed evidence of damage by fire; 12,445 bags were damaged by water only; and 12,986 bags in the third and fourth compartments came out sound.

The libelant seeks to fix the liability upon the respondent for the damage on grounds other than, and in addition to, negligence in the use of the acetylene burner. The claimant is charged with negligence in failing to provide proper fire-fighting equipment, sufficient and sound fire hose, and the American type of steam-smothering lines. I find from the evidence that the fire equipment on the vessel was reasonably fit for the service with reference to the flag of the vessel and to standards generally obtaining. On this count, therefore, the claimant may rely upon the fire statute (46 USCA § 182). Whether the fire statute will be a protection for the claimant on other counts will be later considered.

The libelant further claims that the break in the voyage at Montreal and the installation of canal gear at that point was an unjustifiable deviation from the voyage as contemplated and set forth in the charter party, and hence claimant is liable as an insurer for the damage sustained. This claim raises the question of whether the installation of canal gear at Montreal was necessary and proper. Under the terms of the charter party to the effect that the steamer shall be fitted to proceed through all rivers and canals to Toronto, it was certainly proper, and I think a necessary precaution, in view of the shipowner's guaranty, to install canal gear on the ship for that particular voyage. It was a Norwegian ship which had been engaged

in the ocean trade, and there was no necessity on this voyage for the installation of the canal gear on the ship until it arrived at Montreal, where the canal and lake part of the voyage began. I think that, under the terms of this voyage and this charter party, the owner of the ship was not bound to install the canal gear at the beginning of the voyage. Moreover, the style and type of gear used in the navigation of the St. Lawrence canals was best understood, could be more readily obtained, and presumably could be more efficiently and economically installed at Montreal. It was not needed on the ship during the voyage before it got to Montreal.

There was testimony given at the trial on the question as to whether there was a custom to install canal gear for navigation on the canals and the lake. I think that the weight of evidence is that there was an established practice of fitting the gear on ocean steamers using the canal. My conclusion is that there was on that account no deviation. The Indrapura (D. C.) 238 F. 853; The Salvore (D. C.) 52 F.(2d) 278.

I have found that the fire started and the damage to the cargo resulted from the use of the acetylene burner. I further find that the use of an acetylene burner on the ship when the ship was filled with inflammable cargo was negligence, because proper precautions were not taken by the use of a shield, and otherwise, to protect the ship and its cargo from the sparks. The question now is, Is the claimant responsible for this negligent operation of the acetylene burner, or is he exempted from liability under the fire statute which is applicable to this charter. Under that statute, the owner is not liable for damage to cargo by reason of any fire happening on board, unless such fire is caused by the design or neglect of such owner. In this case the fire did not occur through neglect of an officer or a member of the crew of the ship. If the mate did remove a tarpaulin from the top of the hatch before the spark got into the hold, which is not perfectly clear, yet the main cause of the fire was the negligent use of the torch, and not the action of a member of the crew of the ship.

The installation of the canal gear was a direct act of the owner of the ship, separate and apart from this operation. If, in the course of this installation, the owner caused the damage to the cargo, he is not protected by the fire statute. In my opinion, the ship

agent, Hancock, was acting for and in the place of the shipowner in contracting for the canal gear. There is evidence that the engineering company with which he made a contract had been in business but a short time when this work was done, and remained in business but a short time afterward. I am inclined to the opinion that there is no evidence of their skill, reputation, and responsibility as would relieve the agent from responsibility for their negligent conduct while doing the work. If the agent, Hancock, is held to be liable for selecting an unskillful contractor and damage resulted to the cargo, then this liability is passed on to the owner of the ship. From such liability the owner is not relieved by the fire statute.

I have found that it was proper for the owner to install the canal gear at Montreal, and further that the acetylene torch was properly used for the installation. Upon this state of facts, the owner or the person acting for him is charged with the duty of exercising the highest degree of care in making the installation, particularly in the use of the acetylene torch, from which, on account of the flying sparks, there must be anticipated danger of fire when there is inflammable material in the vicinity. Here the ship's cargo consisted of sugar packed in jute bags which it must be conceded are inflammable. The danger from fire if any of the sparks got into the cargo hold was obvious. Such a result could have been guarded against by taking well-known precautions which in this case were not taken. The result, the fire in the hold, was foreseen, and the duty of the owner to guard against foreseeable results was not fulfilled. It was his duty, and therefore the duty of those acting under his orders, in installing the canal gear under the conditions existing at the time, to exercise the highest degree of care in the doing of the work. I find that he failed to exercise the degree of care required of him under the circumstances.

As I have found as indicated above that the acts of the agent, Hancock, were the acts of the owner, and that under the circumstances of this case the engagement by Hancock of the engineering company to do the work did not relieve the owner of the responsibility by shifting the burden on to an independent contractor, I arrive at the conclusion that the claimant-respondent is liable to the libelant for the damage to the cargo.