EARLE & STODDART, INC., ET AL. *v.* ELLERMAN'S WILSON LINE, LTD.

No. 20.   Argued November 19, 20, 1932.—Decided December 12, 1932.

*Mr. T. Catesby Jones,* with whom *Messrs. D. Roger Englar* and *James W. Ryan* were on the brief, for petitioners.

422

*Mr. Cletus Keating,* with whom *Messrs. L. De Grove Potter, James H. Herbert,* and *Richard L. Sullivan* were on the brief, for respondent.

424

Mr. Justice Brandeis delivered the opinion of the Court.

Earle and Stoddart, Incorporated, and other owners of cargo shipped on the steamship *Galileo*, sued her owner and operator, Ellerman's Wilson Line, Limited, in the federal court for southern New York, for breach of contract to deliver at destination. The defendant pleaded in bar the fire statute, which provides: " No owner of any vessel shall be liable to answer for or make good to any person any loss or damage which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner." Rev. Stat. § 4282, Act of March 3, 1851, c. 43, § 1, 9 Stat. 635.

The District Court made these findings: Shortly after the departure from New York coal in a temporary bunker was found to be afire through spontaneous combustion. Following appropriate efforts to extinguish the fire, the vessel sank and practically the entire cargo was lost. The immediate cause of the loss was the fire, to which no design or neglect of the owner contributed. The immediate cause of the fire was the condition of the coal at the time the voyage was commenced, which rendered the vessel unseaworthy. The sole cause of the unseaworthiness was the gross negligence of the ship's chief engineer in putting a new supply of coal on top of old coal then known to be heated. The Circuit Court of Appeals concurred in these findings and affirmed the decree which dismissed the libel. 54 F. (2d) 913. This Court granted certiorari on the ground of conflict of decisions. 286 U. S. 535.

The cargo-owners concede that ordinarily the phrase in the fire statute " neglect of such owner " means personal negligence of the owner, or, in case of a corporate

owner, negligence of its managing officers or agents; and that the negligence of the master, chief engineer or other ship's officers does not deprive the owner of the statutory immunity. *Walker* v. *Transportation Co.*, 3 Wall. 150; *Craig* v. *Continental Insurance Co.*, 141 U. S. 638, 646. The contention is that the statute does not confer immunity where the fire resulted from unseaworthiness existing at the commencement of the voyage and discoverable by the exercise of ordinary care; or, at least, that the statute does not afford immunity where the owners warrant by their bills of lading, as it is asserted they have done here, that they will " exercise due diligence to make the steamer seaworthy."

*First.* The fire statute, in terms, relieves the owners from liability " unless such fire is caused by the design or neglect of such owner." The statute makes no other exception from the complete immunity granted. The cargo-owners do not make the broad contention that the statute affords no protection to the vessel-owner if the fire was caused by unseaworthiness existing at the commencement of the voyage.[1] Their contention is that it

---

[1] Such a contention with respect to the English Act was rejected by the House of Lords. *Louis Dreyfus & Co.* v. *Tempus Shipping Co.*, [1931] A. C. 726. See also *Virginia Carolina Chemical Co.* v. *Norfolk & N. A. Steam Shipping Co.*, [1912] 1 K. B. 229; *Ingram & Royle* v. *Services Maritimes du Tréport*, [1914] 1 K. B. 541. Compare *Royal Exchange Assurance* v. *Kingsley Navigation Co.*, [1923] A. C. 235, construing the Canadian Act. The English Act relieves the shipowner from liability for loss from fire where the loss occurred " without his actual fault or privity." Merchants Shipping Act, 1894, § 502; 57 & 58 Vict., c. 60. The original English fire statute of 1786, 26 Geo. III, c. 86, which was the model for the American statute of 1851, contained no exception for the owner's fault or privity; the American enactment was a deliberate departure in that respect. The bill as originally reported contained an exception only for the " design " of the owner, but this was amended to read " design or neglect." See 23 Cong. Globe, 31st Cong., 2d Sess., p. 715.

does not relieve the owner if the unseaworthiness was discoverable by due diligence. The argument is that the duty of the owner to make the ship seaworthy before starting on her voyage is non-delegable and if the unseaworthiness could have been discovered by due diligence there was necessarily neglect of the vessel-owner.

In support of this contention, the cargo-owners place some reliance upon The *Edwin I. Morrison,* 153 U. S. 199, *The Caledonia,* 157 U. S. 124, and *The Carib Prince,* 170 U. S. 655. Those cases enunciate the rule that in every contract of affreightment there is, unless otherwise expressly stipulated, an implied warranty of seaworthiness at the commencement of the voyage. The warranty is absolute that the ship is in fact seaworthy at that time, and the liability does not depend upon the knowledge or ignorance, the care or negligence of the shipowner or charterer. Obviously, those cases lend no support to the contention that breach of the implied warranty of seaworthiness constitutes "neglect" of the vessel-owner under the fire statute.[2]

The cargo-owners rely chiefly upon *International Navigation Co.* v. *Farr & Bailey Mfg. Co.,* 181 U. S. 218, and *The Wildcroft,* 201 U. S. 378. Those cases involved the construction of the Harter Act; and the language there employed is different. The Harter Act provides in § 3 that the vessel-owner shall not be liable if he "shall exercise due diligence to make the said vessel in all respects seaworthy." And under that Act the require-

---

[2] Compare also *Christopher* v. *Grueby,* 40 F. (2d) 8, 12–13, cited in behalf of the cargo-owners, which deals with the liability of the shipowner to seamen for failure to provide a seaworthy vessel; and *Bethlehem Shipbuilding Corp.* v. *Gutradt Co.,* 10 F. (2d) 769, likewise cited, which deals with the responsibility of the shipowner, apart from statutory exemption, for loss arising from the default of a shipbuilder on a contract to repair.

ment of due diligence is not satisfied if there is negligence on the part of any of the ship's employees. *International Navigation Co. v. Farr & Bailey Mfg. Co., supra.* But the Act does not purport to create any general duty on the part of shipowners. Its requirement of due diligence is imposed as a condition of securing immunity from liability for certain kinds of losses, like those due to errors in navigation or management. That the provisions of the Harter Act do not refer to liability for losses arising from fire is made clear by § 6 which declares that the Act "shall not be held to modify or repeal §§ 4281, 4282, and 4283 of the Revised Statutes,"—§ 4282 being the fire statute. The courts have been careful not to thwart the purpose of the fire statute by interpreting as "neglect" of the owners the breach of what in other connections is held to be a non-delegable duty.[3] Nothing·

[3] In all the cases where immunity from liability for damage by fire was held to be lost because of neglect of the owners, the courts have based their finding of neglect on the action of the owners or managing agents, or upon their failure to see that action was taken where it was their duty to act. *The Elizabeth Dantzler,* 263 Fed. 596; *Hines v. Butler,* 278 Fed. 877; *Williams S. S. Co. v. Wilbur,* 9 F. (2d) 622; *Arkell & Douglas v. United States,* 13 F. (2d) 555; *Bank Line v. Porter,* 25 F. (2d) 843; *Petition of Sinclair Navigation Co.,* 27 F. (2d) 606; *United States v. Charbonnier,* 45 F. (2d) 174; *The Older,* 1 F. Supp. 119. In *The Etna Maru,* 20 F. (2d) 143, the District Court was of opinion that the fire statute did not confer immunity where the loss was due to unseaworthiness existing at the beginning of the voyage. As an alternative ground of decision, however, the court held that the vessel-owner had not overcome a presumption of personal neglect, arising from the fact of unseaworthiness. On appeal the case was affirmed, 33 F. (2d) 232, but apparently on the ground that the fire statute, like the statutes limiting the extent of liability, leaves the owner liable, in any event, up to the value of the ship. But compare *The Rapid Transit,* 52 Fed. 320, 321. Insofar as the decision rests on the ground advanced by the cargo-owners here, it cannot be approved.

contained in the opinion of this Court in *The Malcolm Baxter, Jr.*, 277 U. S. 323, is to be taken as indicating a different view.

*Second.* No provision in any bill of lading deprives the vessel-owner of the protection given by the fire statute. There are 238 bills of lading on 18 different forms. In no bill of lading is there an express warranty of seaworthiness. In each, there is a provision expressly incorporating the fire statute. Many of the bills of lading contain also this provision: " It is mutually agreed that . . . the carrier shall not be liable, as carrier or otherwise, for any loss, damage, delay or default, whether occurring during transit or before, . . . occasioned by fire or flood, from any cause or wheresoever occurring; . . . by explosion, bursting of boilers, breakage of shafts, of any latent defect in hull, machinery, or appurtenances, or unseaworthiness of the steamer, whether existing at the time of shipment, or at the beginning of the voyage, provided the owners have exercised due diligence to make the steamer seaworthy; . . ." So far as loss from fire is concerned, the quoted provision leaves the area of personal neglect unchanged, adding nothing to the obligations of the vessel-owner. And in view of the express incorporation of the fire statute in the bill of lading, the provision is not to be construed as a waiver of the statutory immunity for loss by fire.[4]

---

[4] Compare *The Strathdon*, 101 Fed. 600, 602; *The Hoffmans*, 171 Fed. 455, 462–463; *The Yungay*, 58 F. (2d) 352, 357; *D'Utassy* v. *Mallory Steamship Co.*, 162 App. Div. 410, 412–414; 147 N. Y. S. 313, affirmed *per curiam* 223 N. Y. 592; 119 N. E. 1040; *Louis Dreyfus & Co.* v. *Tempus Shipping Co.*, [1931] A. C. 726; *Ingram & Royle* v. *Services Maritimes du Tréport*, [1914] 1 K. B. 541. With these cases compare *The Poleric*, 17 F. (2d) 513, 514–516, affirmed *sub nom. Bank Line* v. *Porter*, 25 F. (2d) 843; *Virginia Carolina Chemical Co.* v. *Norfolk & N. A. Steam Shipping Co.*, [1912] 1 K. B. 229.

*Third.* There was no personal contract of the vessel-owner superseding the fire statute. The cargo-owners invoke the rule announced in *Pendleton* v. *Benner Line,* 246 U. S. 353, and *Luckenbach* v. *McCahan Sugar Refining Co.,* 248 U. S. 139. Those cases have no application here. They declare that the statutes limiting the amount of liability of a shipowner to the amount or value of his interest in the vessel and her freight then pending (Act of March 3, 1851, c. 43, § 3, Rev. Stat. § 4283; Act of June 26, 1884, c. 121, § 18, 23 Stat. 53, 57) do not apply to personal contracts of the owner.[5] Here the inquiry is not whether there was a " personal contract," on which the shipowner can be held to the full amount of the loss, but whether he can be held liable at all. He cannot be held liable unless by agreement, or otherwise, he has waived the benefit of the fire statute. The only basis for the claim of waiver is the bill of lading. What has already been said concerning their provisions disposes of that inquiry.

Moreover, the rule announced in the *Pendleton* and *Luckenbach* cases has been applied by this Court only to private charter parties executed by the owner. The bills of lading, which are said to contain " personal contracts," were not executed by the respondent or by any of its officers or managers. They were given, in large part, by agents of railroads or other steamship companies and are to be regarded merely as ship's documents. Compare *Capitol Transportation Co.* v. *Cambria Steel Co.,* 249 U. S. 334, 336.

The District Court was right in dismissing the libel, and the decree of the Circuit Court of Appeals is accordingly

*Affirmed.*

---

[5] See, also, *Richardson* v. *Harmon,* 222 U. S. 96, 106. Compare *In re Pennsylvania R. Co.,* 48 F. (2d) 559, 566; *The No. 34,* 25 F. (2d) 602, 607; *The Soerstad,* 257 Fed. 130.