## THE PRESIDENT WILSON.
### No. 20739–S.

District Court, N. D. California, S. D.
Sept. 25, 1933.

The report and findings of Commissioner Ernest E. Williams are as follows:

To the Honorable Court above named:

Pursuant to an order heretofore made by the above-entitled court, I have taken testimony and I now have the honor to report as follows:

This action is a proceeding in rem against the American Steamship President Wilson to recover for the loss of 2,640 bags of sugar which were totally destroyed by fire on board the Rideout Barge No. 8.

The facts have, in the main, been agreed to by stipulation between the parties. On June 24, 1931, the libelant made a space contract for shipment of 1,000 tons of refined sugar on board the steamship President Wilson from San Francisco to New York, beginning July 2, 1931. The 2,640 bags consumed by fire were part of the 1,000 tons.

Previous shipments of sugar made by the libelant on steamers of the Dollar Steamship Lines, Inc., Limited (the steamship President Wilson belonged to the Dollar Line) established that it was the customary practice of the Dollar Steamship Lines, as a matter of its own convenience, and, at its own expense, to pick up the sugar on libelant's sugar dock through the medium of barges, and then transport said sugar to the docks of the Dollar Lines, where it was loaded onto the steamers or onto the dock. The loading and transportation were subject to the usual form of bill of lading issued by the Dollar Steamship Lines, Inc., Limited, which contained a provision that the carrier was not liable for loss by fire, "on board vessel or on wharf or land or pier or hulk, or lighters or warehouses, or wheresoever occurring."

To facilitate the loading of the 1,000 tons of sugar Rideout Barge No. 5, and Rideout Barge No. 8, and tugboat Halcyon were sent by the Dollar Lines to the libelant's sugar wharf in San Francisco, Cal.

On June 29, 1931, while the said barges were at the sugar dock of the libelant for the purpose of loading sugar, fire broke out on Rideout Barge No. 8 and destroyed 2,640 bags of sugar, the subject-matter of this controversy. At the time the fire started on Rideout Barge No. 8, just the said 2,640 bags of sugar had been loaded thereon. Said barge No. 8 was lying outside Rideout Barge No. 5. The loading was in progress on barge No. 5 at the time.

On the date of the destruction of the sugar the steamship President Wilson was on the high seas. The said steamer arrived at the port of San Francisco on July 2, 1931, and departed therefrom on July 4, 1931.

It is admitted that Rideout Barge No. 8 was seaworthy in construction. The testimony shows that Rideout Barge No. 8 was equipped with a gasoline engine which was used solely for pumping out the bilges. This engine had not been in use for two days prior to the fire. Rideout Barge No. 8 was equipped with a fire extinguisher which had been filled a few days before the fire, and was of a capacity of three or three and one-half gallons.

The evidence fails to disclose the exact cause of the fire. It is apparent that it could have originated from any of the following sources: First, an incendiary; secondly, a spark; thirdly, a surreptitious smoker.

The libelant maintains that the "fire statute" is not applicable in proceedings in rem. Libelant further contends that the clause in the bill of lading which exempts liability for loss sustained by fire merely casts upon the shipper the burden to prove negligence. To discharge this burden of proving negligence, the libelant invokes the doctrine of "res ipsa loquitur," upon the theory that, Rideout Barge No. 8 (the place of the fire) being in the exclusive control of the respondent, the presumption is that the fire was caused by respondent's negligence.

The respondent sets up three defenses, to wit: First, immunity offered by the "fire statute" which provides: "No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner." Rev. St. § 4282; U. S. C. title 46, § 182 (46 USCA § 182). Two, the doctrine of "res ipsa loquitur" is not applicable for the reason that the respondent

did not have possession of the instrumentality which caused the fire. Three, inasmuch as the steamship President Wilson was on the high seas at the time of the occurrence of the fire, the court is without jurisdiction. These issues will be considered separately.

First, does the "fire statute" apply? Libelant contends that the "fire statute" is limited to personal exemption, and does not preclude liability against the vessel itself; and, as this is an action in rem, recovery may, therefore, be had against ship. To sustain this position libelant relies upon The Etna Maru (D. C.) 20 F. (2d) 143, and Id. (C. C. A. 5th) 33 F. (2d) 232, 234. These Etna Maru decisions, ubi supra, are not convincing authority in support of libelant's contention. In The Etna Maru the libel in rem was instituted to collect damages for a cargo of sulphur destroyed on board the steamship Etna Maru by fire and water. It was established that the ship was unseaworthy. This fact induced the District Court to deny the operation of the "fire statute." The Circuit Court conceded that the vessel was unseaworthy but stated: "The conclusion we reach is that, regardless of whether appellant is bound by the expressed warranty of the charter to the extent that it may not limit its liability at all, or whether it has been guilty of negligence personally, it is certain that the unseaworthiness of the vessel at the beginning of the voyage amounted to negligence of either itself or its employees. There is nothing in the statute to bar a recovery against the ship."

Apparently the latter court feels that under such circumstances recovery may be had against the ship. The two decisions in The Etna Maru are somewhat confusing. It must be remembered, however, that the Etna Maru was unseaworthy.

Earle & Stoddart v. Ellerman's Wilson Line (The Galileo), 287 U. S. 420, 53 S. Ct. 200, 77 L. Ed. 403, is not as claimed by libelant, supporting authority for The Etna Maru decision because in the former case the libel was in personam. Mr. Justice Brandeis in the footnote to The Galileo indicates a disapproval of the latter Etna Maru decision.

Undoubtedly, the weight of authority clearly holds that, in actions in rem for the recovery of damage caused by fire, the "fire statute" grants immunity of liability to the vessel, as well as personal exemption; vide The Rapid Transit (D. C.) 52 F. 320; Keene v. The Whistler, Fed. Cas. No. 7,645; Dill v. The Bertram, Fed. Cas. No. 3,910. In the latter case the "fire statute" was even con-

strued to include cargo which had been brought alongside the ship for loading.

In the very recent opinion in the cases of Dingfelder et al. v. S. S. Brenta (Boera et al. v. S. S. Brenta) 5 F. Supp. 682, United States District Court, Eastern District of New York, decided April 3, 1933, the "fire statute" precluded liability for a cargo of onions destroyed by fire.

■ Furthermore, the bill of lading involved in this case provides in clause 1: "Liability of carrier shall in no event, be greater than provided by Sections 4281, 4282, and 4283 of the Revised Statutes of the United States."

Clause 2 provides against liability originating from, among other causes, "fire or water on board vessel, or on wharf, or land or pier, or in hulks or lighters, or warehouses or wheresoever occurring."

In The Queen of the Pacific, 180 U. S. 49, 21 S. Ct. 278, 45 L. Ed. 419, a libel in rem was filed to recover damages to certain miscellaneous cargo caused by leakage. The bill of lading contained a provision that such claims against the company or stockholders must be presented within thirty days; claims were not filed for nearly four years. The Supreme Court reversed the Ninth Circuit (94 F. 180), and declared that to permit recovery under an action in rem was, in effect, an assumption that there were two contracts; one with the company, and a distinct one with the ship. Naturally, the court ruled that the stipulations in the bill of lading extended to the ship as well as to the company.

■ Moreover, to remove the vessel from the exemption of the "fire statute" it was incumbent upon the libelant to show that the fire was caused by the design or neglect of the shipowner. This burden has not been discharged by the libelant. The Salvore (C. C. A.) 60 F.(2d) 683; Charbonnier v. U. S. (D. C.) 45 F.(2d) 166, affirmed (C. C. A.) 45 F.(2d) 174.

The "fire statute" and the provisions of the bill of lading in the instant case afford complete immunity of liability to the ship. It is, therefore, unnecessary that I consider the other issues involved; for the sake of expediency, I will pass upon the other questions raised herein.

■ Secondly, does the doctrine of "res ipsa loquitur" apply to the facts in this matter?

As indicated, the cause of the fire is unknown. The testimony shows that it might have been caused from any one of several sources.

An adoption of the libelant's contention, namely, that, granting the cause of the fire to be unknown, yet, inasmuch as the respondent was in possession of the place of the fire, to wit, the barge, the doctrine of "res ipsa loquitur" applies is going far afield of the principle. Such a view is tantamount to saying that whenever a fire occurs on board a vessel (assuming, of course, that the fire statute does not apply), and the source of the fire is unknown, the mere possession of the place (the vessel) of the fire sets the doctrine in operation. Obviously, this is an unwarranted expansion of "res ipsa loquitur." Mere possession of the thing as a basis for applying the doctrine is denied in the carbonated drinks cases; vide the footnote to Chiles v. Fort Smith Commission Co., in 8 A. L. R. 493, at page 500 et seq.

■ It is accepted law that the thing or instrumentality which caused the damage must be under the exclusive control and management of the person against whom the doctrine is invoked. San Juan Light & Transit Co. v. Requena, 224 U. S. 89, 32 S. Ct. 399, 56 L. Ed. 680.

■ The proper application of the doctrine is clearly expressed in the following quotation: "To be applied only when the nature of the accident itself, not only supports the inference of the defendant's negligence, but excludes all others." Lucid v. E. I. Du Pont de Nemours Powder Co. (C. C. A. 9th) 199 F. 377, 378, L. R. A. 1917E, 182. Vide; also Hernandez v. Southern California Gas Co., 213 Cal. 384, 2 P.(2d) 360; Scellars v. Universal Service Everywhere, 68 Cal. App. 252, 228 P. 879; City of Denver v. Porter (C. C. A.) 126 F. 288.

In the instant action the law as cited bars the application of "res ipsa loquitur" for the reason that the fire may have been produced from any one of several different causes, and it cannot be said that the thing or instrumentality which caused the damage was under the exclusive control or management of the shipowner. (There is no evidence that the barge itself caused the fire.)

■ Thirdly, does the fact that the steamship President Wilson was on the high seas remove the case from the jurisdiction of this court? The court has heretofore determined this issue by overruling the exceptions to the jurisdiction of the court, and, in so far as this proceeding is concerned, the jurisdiction of the court was recognized by overruling the said exceptions.

Conclusion.

I find:

First, the "fire statute" is applicable, and, therefore, grants immunity to the ship. (Idem under the bill of lading.)

Secondly, the facts appropriately bar the operation of "res ipsa loquitur"; and the libelant has failed to discharge the burden of proof of establishing negligence. .

Thirdly, the issue of jurisdiction was passed upon by the court in the overruling of the exceptions to jurisdiction.

The respondent is entitled to a decree dismissing the libel and for costs of suit.

Sawyer & Cluff, of San Francisco, Cal., for libelants.

Lillick, Olson & Graham, of San Francisco, Cal., for respondents.

ST. SURE, District Judge.

After due consideration of the report of the honorable Ernest E. Williams, United States Commissioner, dated July 11, 1933, and being fully informed in the premises, and good cause appearing therefor, the said report is hereby confirmed, and it is hereby ordered that a decree be entered dismissing the libel herein, with costs to be awarded to the respondent.