## THE IDA.

**COMPAGNIE D'ENTREPRISES COMMERCIALES EN EGYPTE v. COSULICH SOCIETA TRIESTINA DI NAVIGAZIONE et al.**

No. 196.

Circuit Court of Appeals, Second Circuit.
Feb. 4, 1935.

See, also, 6 F. Supp. 992.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (L. De Grove Potter and William H. Postner, both of New York City, of counsel), for respondent-appellant.

Hill & Rivkins, of New York City (Robert E. Hill, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

On June 1, 1933, nitrate of soda in bags was delivered to the respondent's ship Ida at Hopewell, Va., for carriage to Alexandria, Egypt. Instead of proceeding directly to Alexandria, the ship called in succession at New Orleans, Houston, Galveston, Mobile, Venice, Trieste, and Fiume and arrived at Alexandria on July 29, 1933. She then began to discharge the nitrate, and had not finished when, on the evening of August 3d, a fire broke out in No. 4 lower hold and damaged some of it still remaining there. This suit was brought by the libelant, as owner of the nitrate and the one entitled to delivery, to recover the fire damage. The answer to the amended libel admitted receipt of the nitrate in good order and condition for carriage to Alexandria; that the ship was generally engaged as a common carrier, though it denied that its engagement was such in the carriage of this nitrate; that the ship called at the ports already named and did so at the direction of the respondent, though that it deviated in so doing was denied; that part of the nitrate was damaged by fire and by water used to extinguish the fire at Alexandria; and alleged that the cause of the fire was unknown and "was unrelated to any condition that existed and which was unrelated to any events that took place prior to the arrival of the vessel at Alexandria."

It set up as a first defense a charter party providing for the carriage of the nitrate, "via port or ports," as part cargo under bills of lading to be signed by the master in accordance with a form attached, which included a clause identical with one in the charter party which relieved each party from responsibility to the other for "damages or consequences arising out of failure to load, transport, discharge or receive cargo (or any part thereof) when such failure is due to * * * fires, * * * or other causes naturally and reasonably interfering with, or beyond the reasonable control, of the parties hereto or either of them." As a second defense, the fire statute, section 4282, R. S. (46 USCA § 182), was pleaded.

The interlocutory decree appealed from was entered after exceptions to the answer had been filed and sustained. The decision was put on the ground that, because the ship deviated, the clauses in the charter party and bill of lading, above quoted in part, were displaced, and that for the same reason the fire statute was not applicable.

Although strictly it may be that the pleadings are insufficient to make it possible to decide the question of deviation before trial, the respondent does not rely upon that, and has submitted the case as though the claimed deviation had been established. We shall therefore decide the issues upon the assumption that the carriage contract was broken by deviation.

■ Our attention has been called to many cases in which the effect of a deviation upon the rights of the parties under the Harter Act (46 USCA § 190 et seq.) has been involved; as well as to cases where it has been considered in connection with the right to limit liability. They all deal with one phase or another of how far a party who has committed a fundamental breach of a contract will be permitted to retain any contractual advantage. It is frequently said that deviation makes the ship an insurer of the cargo. The Willdomino, 272 U. S. 718, 47 S. Ct. 261, 71 L. Ed. 491; The Sarnia (C. C. A.) 278 F. 459; The Citta Di Messina (D. C.) 169 F. 472. This is so when a special contract of carriage which the parties have made cannot be enforced by the party guilty of the breach and its liability becomes what it would have been had it undertaken to carry the goods without any restriction of the liability imposed by law upon a common carrier. Since that is the liability of an insurer, the deviating carrier has it. We need not, however, pursue the subject further at this time to determine whether the clauses in the charter party and the bill of lading exempting the respondent from fire damage liability were binding when the ship reached Alexandria with the cargo undamaged after the deviation, for we think the fire statute is a bar to the action, and, if so, the first defense alleged is unnecessary.

The statute provides that:

"No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner." Section 4282, R. S. (46 USCA § 182).

The language of the statute is very broad. No owner of a vessel is liable to cargo for fire damage "unless such fire is caused by the design or neglect of such owner." Except as limited by the clause just quoted, the immunity is complete. Earle & Stoddart v. Ellerman's Wilson Line, 287 U. S. 420, 53 S. Ct. 200, 77 L. Ed. 403. There is no claim that the fire was caused by the design of the respondent.

In a vague way a breach by failure to perform a contract may be a "neglect" to perform it. Perhaps that depends upon whether the breach is intentional or inadvertent. But we need not indulge in any such nice distinctions now. In the case last cited it was held that a failure to use due diligence to make a ship seaworthy was not a "neglect" within the meaning of the fire statute, and the distinction between its provisions and those of the Harter Act and the limitation of liability statute was noted.

■ But even if it be assumed, arguendo, that this deviation was a "neglect" within the meaning of the word as used in the fire statute, the decree was erroneous. The neglect which will deprive the shipowner of protection is a neglect which caused the fire. The statute expressly so limits it. For present purposes it has been established by the allegations in the answer that there was no causal connection whatever between the deviation and the fire.

■ Nor did the respondent by contract deprive itself of the immunity given by the statute. Neither its charter party nor its

bill of lading contained any provisions which placed upon it any greater burden in respect to damage by fire than it had under the statute. While the right to relinquish by contract the benefits of the statute was undoubtedly possessed by the respondent, it will not be taken to have done so without plain proof to that effect. Bank Line v. Porter (C. C. A.) 25 F.(2d) 843.

The Indrapura (D. C.) 171 F. 929, is not contrary to the result we have reached. It was recognized in that case that the fire statute applied notwithstanding a deviation which had no causal relation to the fire. In so far as the St. Paul, 277 F. 99 (D. C. N. Y.), is contrary, it is not to be considered the law in this circuit.

Decree reversed.