## FIDELITY-PHENIX FIRE INS. CO. OF NEW YORK v. FLOTA MERCANTE DEL ESTADO.

### THE RIO GUALEGUAY.

### No. 14329.

United States Court of Appeals
Fifth Circuit.

July 10, 1953.

Rehearing Denied Aug. 11, 1953.

Eberhard P. Deutsch, Deutsch, Kerrigan & Stiles, Nigel Rafferty and James Garrison, New Orleans, La., for appellant.

L. deGrove Potter, New York City, Leon Sarpy, New Orleans, La., Kirlin, Campbell & Keating, New York City, Chaffe, McCall, Toler & Phillips, New Orleans, La., for appellees.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This libel in admiralty was brought against the owner and operator of the Steamship Rio Gualeguay to recover for fire damage to a shipment of newsprint on December 3, 1943, while the vessel was in the harbor of New Orleans, Louisiana. Libellant is the insurer of the newsprint, to whom the rights of the owner thereof were assigned upon payment of the loss. The appeal is from a decree dismissing the libel. 102 F.Supp. 861.

The vessel's No. 2 hold had been divided in half by a thwartship wooden bulkhead, the after half of the hold being used for the stowage of reserve bunker coal, the forward half for cargo. At the time of the fire, this bunker was filled with coal, the pile extending some 16 feet above the level of the main deck. The coal had been loaded in the bunker only 5 days before the fire. The wooden bulkhead was sheathed on the cargo side with heavy paper, designed to

prevent the seepage of coal dust into the cargo, and to make the bulkhead as nearly airtight as possible.

Hold No. 2, immediately forward of the bulkhead, had been loaded with general cargo consisting of cigarettes, tobacco, tin plate, machinery, barrel staves, brick, and the newsprint in question. The vessel completed loading at about 4:30 p. m. on December 2, 1943. The hatch was closed and the cover battened down in preparation for the vessel's departure the following day. On the early morning of December 3, 1943, shortly after midnight, an odor of burning material was noticed below decks, and smoke was observed coming out of the ventilators of cargo hold No. 2.

The harbor fire boat, and land equipment of the New Orleans fire department, responded promptly to a call from the vessel, but the ship's officers would not permit the hatch cover to be removed, as they wished to use the ship's steam smothering system to extinguish the fire in order to prevent water damage to the cargo. This was tried unsuccessfully for about 30 to 40 minutes, after which the hatch was opened and the fire boat and land equipment pumped large quantities of water into the hold. After about 2 hours, the vessel was beached to prevent listing, and the fire boat continued to pump water into the hold until it was almost level with the main deck, thus extinguishing the fire.

Respondent's defense is based upon the so-called "fire statute," 46 U.S.C.A. § 182, which in effect provides that no owner of a vessel shall be liable for cargo loss or damage by fire on board the vessel "unless such fire is caused by the design or neglect of such owner." See also the "Carriage of Goods by Sea" Act, 46 U.S.C.A. § 1304(2) (b). Contending that the fire originated from spontaneous combustion in the bunker coal, induced by faulty construction of the wooden bulkhead, and that the vessel was unseaworthy because her steam smothering system was defective and inoperative, and also because faulty construction of the bulkhead prevented proper drainage in hold No. 2, libellant asserts that it has successfully met the burden of establishing that the fire occurred by the "design or neglect" of respondent.

[1] The issues are largely factual. Although in an admiralty proceeding an appellate court has the power to try the case *de novo* on appeal, it is not required to do so, and will not ordinarily disturb the trial court's findings of fact unless they are clearly in error, particularly when, as here, the trial court has seen and heard the witnesses. Mosher v. Parker Bros. & Co., 5 Cir., 178 F.2d 419; Sawyer, Inc., v. Poor, 5 Cir., 180 F.2d 962; Lucayan Transports v. McCormick Shipping Corp., 5 Cir., 188 F. 2d 202.

■ It is well settled that a shipowner is not liable for damages resulting from fire unless libellant proves that the cause of the fire was due to the "design or neglect" of the owner, the burden being upon libellant. It is also well settled that this rule applies to vessels of foreign registry. Earle and Stoddart v. Ellerman's Wilson Line, 287 U.S. 420, 53 S.Ct. 200, 77 L.Ed. 403; Consumers Import Co. v. Kabushiki, 320 U.S. 249, 64 S.Ct. 15, 88 L.Ed. 30, modifying Kokusai Kisen Kabushiki Kaisha v. Texas Gulf Sulphur Co. (The Etna Maru), 5 Cir., 33 F.2d 232; The Older, 2 Cir., 65 F.2d 359; The Ida, 2 Cir., 75 F.2d 278; Hoskyn & Co. v. Silver Line, 2 Cir., 143 F.2d 462.

The district judge found that the use of a wooden bulkhead in these circumstances was a customary practice; that this bulkhead was prudently constructed and used; and that the fire originated, not in the bunker coal, but in the cargo hold. He further found that there were no clinkers or ashes in the bunker coal after the fire, though the bulkhead had apparently been heated to a high temperature by the fire; that the fire was seen to be in the cargo hold, from which smoke was first discovered to be rising, and into which the fire department pumped the water. No water was pumped into the coal bunker, and no smoke emanated from the coal bunker. Examination after the fire indicated that the fire was in the tobacco and newsprint in the after part of the cargo hold, on the starboard side. The deck and the shell plating of the ship, in the vicinity of the tobacco and newsprint,

were buckled from the heat of the fire, but there was no buckling on the bunker side of the bulkhead. The wooden bulkhead itself was badly charred on the cargo side, but was not burned on the bunker side, except in a few spots where the fire had eaten through the bulkhead. This, and other supporting evidence, fully justifies the findings of the district judge as to the place of origin of the fire, and negatives the asserted origin from spontaneous combustion in the coal bunker.

There is evidence to the effect that during the fire men were seen bringing up "red, glowing" coals from below decks, and that smoke seeped from the coal bunker into the fireroom through small holes in a steel bulkhead, separating the bunker and fireroom. This evidence was so completely at variance with other and strongly countervailing evidence we can find no fault with the refusal of the district judge to rely upon it. The actual cause of the fire remains unknown. The burden of proving that the fire was caused by the "design or neglect" of the vessel's owner is upon the libellant. We agree with the district judge that libellant's proof was inadequate to meet that burden.

Nor does the evidence sustain libellant's charge that the wooden bulkhead blocked the drainage from No. 2 hold, so that the hold could not be properly drained. On the contrary, the evidence shows that the wooden bulkhead did not extend downward to the tops of the water tanks in the bilge of the vessel, as libellant contends, but rested on a ceiling over the tank tops, leaving open spaces through which the water drained under the coal bunker and into the outlet. Obviously the drainage was inadequate to accommodate the abnormal flow of water from the fire fighting equipment, but within a few hours after the pumping ceased, the hold was clear of water.

Libellant also contends that a foreign vessel such as the one here involved, should not have the advantage of the "fire statute" above mentioned, 46 U.S.C.A. § 182, without first showing compliance with 46 U.S.C.A. § 463, formerly section 4470, Rev.Stat., which provides "Every steamer carrying passengers or freight shall be pro-

vided with suitable pipes and valves attached to the boiler to convey steam into the hold and to the different compartments thereof to extinguish fires * * *." But the fire statute is not by its terms so conditioned. In Earle and Stoddart v. Ellerman's Wilson Line, 287 U.S. 420, 53 S.Ct. 200, 77 L.Ed. 403, it was said: "The fire statute, in terms, relieves the owners from liability 'unless such fire is caused by the design or neglect of such owner.' The statute makes no other exception from the complete immunity granted." The safety statute, 46 U.S.C.A. § 463, carries its own penalty for non-compliance. 46 U.S.C.A. §§ 497, 498, formerly sections 4499, 4500, Rev.Stat.

The fire statute makes no distinction in terms between foreign vessels and vessels of domestic registry. All the cases above cited involve foreign vessels. Whether or not a foreign vessel should be denied the benefit of the fire statute unless it has complied with the safety statute, 46 U.S.C.A. § 463, as contended by libellant, is a question of policy for legislative determination. It is not for the courts to create the requirement as a matter of what might be termed "broad equity."

In order to save the cargo from excessive water damage, it was reasonable to first try the vessel's steam smothering system. The effort was continued for only 30 to 40 minutes, after which water was pumped in. There is evidence that when the cover was removed from No. 2 cargo hatch, no steam emanated therefrom, and none was coming from the steam discharge pipe located inside the hatch coaming of No. 2 hold, at a point about 1½ feet above the level of the main deck. The mere fact that the vessel's steam smothering system did not extinguish the fire is not of itself sufficient to deprive respondent of the advantage of the "fire statute." As already stated, the benefit of that statute is not legislatively conditioned upon compliance with the safety act, 46 U.S.C.A. § 463. Although libellant criticizes the location of the steam discharge pipe as too high to effectively transmit steam to the lower hold, which might affect its efficiency, there is no evidence of *negligence* in either the construction or attempted use

of the system which would preclude the defense afforded by 46 U.S.C.A. § 182.

There was here no such entire absence of due preparedness and precaution to meet contingencies of fire, as in the case of Hines v. Butler, 4 Cir., 278 Fed. 877, relied upon by libellant. If it could be said that the conditions here shown to exist rendered the vessel unseaworthy, as in Hines v. Butler, a different question would be presented.

Finding the district judge well supported by both fact and law, the decree dismissing the libel is

Affirmed.