The **AUTOMOBILE INSURANCE COMPANY** et al., Libellants-Appellants,

v.

**UNITED FRUIT COMPANY,**
Respondent-Appellee.
(Consolidated Cause)
No. 171, Docket 23289.

United States Court of Appeals
Second Circuit.

Argued March 8, 9, 1955.

Decided June 9, 1955.

Bigham, Englar, Jones & Houston, New York City, for appellants, Henry N. Longley and William F. Andersen, New York City, of counsel.

Burlingham, Hupper & Kennedy, New York City, for appellee, Burton H. White, Hervey C. Allen, Jr., and Robert A. Feltner, New York City, of counsel.

Before MEDINA and HINCKS, Circuit Judges, BURKE, District Judge.

BURKE, District Judge.

Libellants were the owners of cargo or underwriters insuring cargo shipped on respondent's S. S. Shell Bar for carriage to Havana and Central American ports. The vessel sailed from New York on the afternoon of May 1, 1948. Libellants' cargo was damaged or destroyed by a fire which broke out in the early morning of May 3, 1948, when the vessel was off Cape Hatteras. Libellants filed libels claiming that the damage was caused by the negligence of respondent. Respondent's defense was based (1) on the Fire Statute, 46 U.S.C.A. § 182, which exempts an owner from liability for loss or damage to cargo due to fire "unless such fire is caused by the design or neglect" of the owner of the vessel (a bareboat charterer is deemed an owner, 46 U.S.C.A. § 186), and (2) on the Carriage of Goods by Sea Act, 46 U.S.

C.A. § 1304(2) (b), which provides that, "Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—* * * (b) fire, unless caused by the actual fault or privity of the carrier." Libellants' claim of negligence on the part of the respondent related to acceptance for shipment and the manner of stowage of 100 steel drums, each containing 100 lbs. of bleaching powder, known also by the trade name "Perchloron", manufactured and packed by Pennsylvania Salt Manufacturing Co., Philadelphia, Pa. Each of the drums had affixed a yellow label on which was printed in large letters, "Calcium Hypochlorite", and the legend in smaller type: "Active ingredient calcium hypochlorite not less than 70% by weight.—Warning: Strong Oxidizing agent, contact with combustible material may cause fire. Keep away from combustible material. Keep covered when not in use. Store in a cool, dry place." The drums were stowed in No. 1, 'tween-deck compartment, a few feet aft of the hatch coaming on the starboard side, running inboard about a dozen feet, three rows deep and three tiers high. They were stowed on wooden dunnage and against wooden cargo battens on the starboard side. In the same compartment and aft of the drums were stowed wooden cases containing motors placed against the bulkhead, one case wide and about three feet high, and on top of these cases, 1200 paper bags of talc extending forward to the drums of bleaching powder. In the same compartment and in the vicinity of the drums were quantities of shellac in burlap bags and baled piece cotton-goods covered with paper. The District Court found 122 F.Supp. 238, that libellants had failed to sustain their burden of showing that the fire was caused by the bleaching powder, or that the stowage was negligent, or that the manner of stowage was the proximate cause of the fire. (Finding No. 9).

Libellants argue that negligent stowage causing the fire may be inferred from the proof that the fire started in the after end of No. 1 'tween-deck. They contend also that the fire resulted from contact of the bleaching powder with combustible material, either dunnage or cargo stowed in the immediate vicinity. The claim that the fire started in the after end of No. 1 'tween-deck is based on certain documentary evidence, on testimony regarding the concentration of fire damage and on certain answers of the ship's Master on interrogation by the United States Coast Guard Investigating Officer when the vessel arrived at Norfolk. Without reciting in detail the evidence relied on by libellants to sustain their claim in this respect, it is sufficient to say that that was not all the evidence. The Chief Officer who first discovered the fire, the Master who arrived on the bridge a few minutes after the discovery of the fire, and the general average surveyor who examined the vessel and damaged cargo at Norfolk two days after the fire, all testified at the trial that they could not determine where the fire started or what caused it. The District Court found that the first indication of fire was in both No. 1 and No. 2 compartments (Finding No. 4). There is ample support in the evidence to sustain that finding.

Libellants argue that a number of drums which had contained bleaching powder were found, upon discharge of the damaged cargo at Norfolk, to have corroded through and that the seams of a number of them had been opened up by internal pressure, and that the contents of the drums were missing. They argue on the basis of expert testimony that calcium hypochlorite is an oxidizing material which presents the danger of spontaneous decomposition leading to corrosion or rupture of its containers, and that if it comes in contact with combustible cargo the danger of a fire of great intensity is presented. Since there was no other cargo in No. 1 'tween-deck which presented any danger of spontaneous combustion, and since there was no possibility of any external agency having caused the fire, they argue

that they have discharged the burden of showing that the manner of stowing the bleaching powder caused the fire, because they have shown conditions and circumstances from which that inference could reasonably be drawn.

■ The condition of the drums when they were examined at Norfolk was their condition after they had been subjected to the intense heat of the fire. There was no evidence which excluded the possibility that the drums had ruptured and leaked their contents because of the intense heat to which they had been subjected in the fire. The question here is not whether the evidence would support an inference that spontaneous combustion within the drums and the resulting leakage of the contents and resulting oxidation upon coming in contact with combustible material had caused the fire. The question is whether the proof compelled such an inference. Cases such as Standard Oil Co. v. R. L. Pitcher Co., 1 Cir., 1923, 289 F. 678 and The Edmund Fanning, 2 Cir., 1953, 201 F.2d 281, cited by libellants, do not sustain their argument. In the Standard Oil case the jury had found a verdict in favor of the plaintiffs, based on the claim that the defendant's negligence had caused the fire which resulted in damage to the plaintiff. On appeal the Court merely held that it could not say as a matter of law that such finding was clearly wrong. In The Edmund Fanning the District Judge had found that the Government, having sustained cargo damage due to fire while the ship was in port at Genoa, Italy, had the burden of showing that the stowage was improper due to the negligence of Isbrandtsen, the charterer of the vessel, and the burden of showing that the negligent stowage had caused the fire, and had found that the Government had met this burden by the proof. On appeal this Court held that the District Judge did not err in holding that the Government had met this burden. Here the libellants have had no finding that the respondent's negligence caused the fire. The state of the proof at the conclusion of the case did not require a finding that the manner of stowage of the drums had caused the fire. There was evidence that the fire was first discovered at 5:43 A. M., that smoke and flames were seen coming out of the four ventilators leading from compartments No. 1 and No. 2, that the smoke was heavy and black, the kind of smoke usually made by a general cargo fire, not the grayish haze characteristic of decomposing calcium hypochlorite, that about twelve minutes later No. 2 hatch blew up, lifting heavy hatch covers weighing in excess of a ton each, that it was the fire in No. 2 hatch which was the most difficult to extinguish, and that the damage sustained in No. 2 hatch was just about the same as the damage in No. 1. On all the evidence the District Judge was justified in making the negative finding (Finding No. 9) that the libellants had failed to sustain their burden of showing that the fire was caused by the drums of bleaching powder or by their improper stowage. Hoskyn & Co. v. Silver Line, 2 Cir., 1944, 143 F.2d 462, 465, certiorari denied 323 U.S. 767, 65 S. Ct. 116, 89 L.Ed. 613.

Libellants contend that the respondent was guilty of statutory fault in transporting the drums of bleaching powder in violation of Coast Guard Regulations, and that the statutory fault doctrine established by The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148, applies to proof of the cause of a fire resulting in cargo damage. Sec. 170(6) of Title 46 U.S.C.A. provides that it is unlawful to stow or transport dangerous cargo on a vessel except in accordance with regulations established by the Coast Guard. Subdivision (8) of the same section provides that a carrier "shall refuse to transport" dangerous cargo in violation of the provisions of the statute or of the Coast Guard Regulations. The Coast Guard adopted appropriate regulations, Code of Federal Regulations, Title 46, establishing a list of commodities described as "Dangerous Articles", including calcium hypochlorite, and placing certain obligations on carriers of such cargo requiring shippers' certification

as to description, packing, marking, etc., and requiring that such cargo be stowed under direction and observation of a qualified officer licensed by the Coast Guard, and requiring a "Dangerous Cargo Manifest" and a "Dangerous Cargo Stowage Plan" and prohibiting the carriage of "Dangerous Articles" or substances as cargo unless shown on the manifest. For purposes of this discussion we shall assume that the drums of bleaching powder were being transported in violation of statute and Coast Guard Regulations.

Since 1851 in this country an owner of a vessel has had total exemption from liability in all cases of loss by fire, except those caused by his design or neglect. Rev.Stat. § 4282, Act of March 3, 1851, c. 43, § 1, 9 Stat. 635. Providence & New York Steamship Co. v. Hill Manufacturing Co., 109 U.S. 578, 602, 3 S.Ct. 379, 27 L.Ed. 1038. The purpose of the statute was to put American shipping on an equality with that of other maritime nations, The Main v. Williams, 152 U.S. 122, 128, 14 S.Ct. 486, 38 L.Ed. 381, by enabling shipowners to offer a rate for transportation only, "without loading it for fire liability." Consumers Import Co. v. Kabushiki Kaisha, 320 U.S. 249, 255, 64 S.Ct. 15, 18, 88 L.Ed. 30. The immunity from liability for fire loss under the Fire Statute is not conditioned upon compliance with other statutes, or with Coast Guard Regulations. Earle & Stoddart v. Ellerman's Wilson Line, 287 U.S. 420, 425, 53 S.Ct. 200, 77 L.Ed. 403; Fidelity-Phenix Fire Ins. Co. v. Flota Mercante Del Estado (The Rio Gualeguay), 5 Cir., 1953, 205 F.2d 886, 888, certiorari denied 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411. There are no exceptions other than those expressed in the statute itself, viz., "unless such fire is caused by the design or neglect of such owner." We are not justified, in applying the doctrine of statutory fault, to engraft on the Fire Statute the condition of compliance with requirements found elsewhere, whether by statute or regulation. To allow the application of the doctrine of statutory fault to supply the necessary evidence to satisfy the cargo interest's burden of proof of establishing that the fire was caused by the design or neglect of the owner would serve to emasculate the Fire Statute by diluting the owner's immunity from fire loss liability.

We think that congress intended as a condition for recovery for damage due to fire loss to place the burden on cargo interests of establishing that the fire was caused by the design or neglect of the owner. Since 1851 there has been no indication of congressional intent to relieve cargo interests of that burden. The exemption provided by the Carriage of Goods by Sea Act, enacted in 1936, 46 U.S.C.A. § 1304(2) (b), was the same as that provided by the Fire Statute, and the purpose of the exemption was the same. A/S J. Ludwig Mowinckels Rederi v. Accinanto, Limited, 4 Cir., 1952, 199 F.2d 134, 144, certiorari denied 345 U.S. 992, 73 S.Ct. 1129, 97 L. Ed. 1400. Congress thus extended the benefits of the Fire Statute to a "carrier" though not a shipowner, or an owner pro hac vice. No case has been called to our attention which would indicate a tendency on the part of the courts to relieve cargo interests of that burden. We think it significant that no court has applied the doctrine of statutory fault in a case involving the exemption provided by statute. We are unwilling to allow a presumption supplied by the doctrine of statutory fault to substitute for proof of cause required by statute. To do so would at times result in shifting the burden of proof to the owner of a vessel by requiring him to show freedom from fault. This we believe would undermine the very purpose of the statutory exemption. In any event libellants can have no recourse to the doctrine of statutory fault because there is lack of evidence here that any statutory fault was a proximate cause of the fire.

Since in our view the District Judge did not err in holding that libellants had not proved that the fire was caused

by the drums of bleaching powder or by their improper stowage, there is no need for us to consider the question whether respondent was personally negligent.

Affirmed.