## LEACH v. St. LOUIS–SAN FRANCISCO RY. CO. (two cases).

### No. 5631.

Circuit Court of Appeals, Sixth Circuit.
April 15, 1931.

Lowell W. Taylor and A. A. Hornsby, both of Memphis, Tenn., for appellants.

Canada, Williams & Russell, of Memphis, Tenn., for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

These cases were heard together both in the District Court and here. Appellant Ernest K. Leach, Jr., sued appellee for damages for personal injuries. E. K. Leach, Sr., father of Ernest K. Leach, Jr., sued upon the same accident for damages for loss of the services of his son and for the expenses incident to the treatment of his injuries. At the time of the accident Ernest K. Leach, Jr., was about 12 years of age. On his way home about 5 o'clock p. m., November 7, 1928, he was walking along appellee's right of way near its intersection with McLemore avenue in Memphis, and as one of appellee's freight trains started, overtook, and was slowly passing him, he ran along beside it, climbed upon it, and took a position between two box cars, where he rode until his left foot was somehow caught between the cars and crushed. He extricated his foot and jumped to the ground after he had ridden about a thousand feet. The train was moving very slowly when he got on it, but gradually increased its speed to about 15 miles per hour. Appellants here challenge the correctness of directed verdicts in favor of appellee upon motions made at the close of appellants' evidence. We think the motions should have been denied.

■ *As to the case of Ernest K. Leach, Jr.:* The uncontradicted evidence is that "the man on the engine" leaned out of the window and watched the boy as he climbed upon the train and that "the defendant's employee up on top of one of the box cars" otherwise styled "another one of those in charge of the operation of the trains" saw him climb upon the cars. The inference is that these employees were the engineer and a brakeman. Nothing indicates that either of them knew the boy. It is fair to assume, however, that to them he had the appearance in size of the average boy of his age and with the train increasing its speed the engineer and brakeman must have known or at least a jury might reasonably conclude that they knew that the situation was perilous for such a boy. Neither of them did anything about it. We think that whether it was negligence for the engineer and fireman to unconcernedly permit the boy to board the train and continue in such position was at least a jury question. If these employees knew of his danger, it is settled that it was their duty to use ordinary care to prevent his injury. Gilbert v. Erie R. Co., 97

F. 747, 752 (C. C. A. 6); Robbins v. Penna. Co., 245 F. 435, 441 (C. C. A. 6). This is the familiar doctrine of "discovered peril." Even a trespasser is entitled to the observance of due care for his protection after those in charge of the train know that he has exposed himself to peril. Newport News & M. V. Co. v. Howe, 52 F. 362, 369 (C. C. A. 6); Felton v. Aubrey, 74 F. 350, 356 (C. C. A. 6); Salt Lake & U. R. Co. v. Trumbull (C. C. A.) 246 F. 806, 808; Kalmich v. White, 95 Conn. 568, 572, 111 A. 845; Trevethan v. Phila. & Reading Ry. Co., 244 Pa. 414, 416, 90 A. 796; Thompson on Neg. (2d Ed.) Vol. 2, sec. 1806; Cooley on Torts, § 674.

█ We cannot say that there was no adequate time, after the boy mounted the cars, to make protective measures effective. He boarded the train just after it started and while it was running very slowly. A fair inference is that he rode a considerable distance before he was injured; that he then extricated himself and jumped off after he had ridden about a thousand feet. Fairminded men might reasonably believe that after the boy was seen entering between the cars the engineer could have stopped the train and avoided the accident or that the brakeman might have given the boy some effective warning of his peril and aided him to alight in safety. The evidence tends to show that the brakeman was on one of the box cars. If these protective steps or any of them could have been taken, then the question of whether the situation demanded their exercise was for the jury. The law of course requires no more than ordinary or due care but after all such terms as "ordinary care," "due care," or "due diligence" are of relative significance. They yield to no fixed or arbitrary definition. The degree of care required in any given situation is that which is commensurate with the danger involved. We cannot say as a matter of law that ordinary precaution did not require the brakeman to at least call to the boy and admonish him or that ordinary prudence and diligence did not require the engineer to stop the train. We think different conclusions might reasonably be drawn. Some fair-minded men might believe that ordinary care did not require appellee to stop its train for the protection of a trespasser old enough to be at large and large enough to mount the moving cars. Yet other men, equally as honest intellectually, considering the size and appearance of the boy together with his position between the cars and that stopping otherwise involved no more serious consequences than a short delay, might conclude that ordinary precaution and diligence required no less than that the train be stopped and the boy ejected.

█ We think, therefore, that the case should have been submitted to the jury (Grand Trunk R. Co. v. Ives, 144 U. S. 408, 417, 12 S. Ct. 679, 36 L. Ed. 485; Payne v. Haubert, 277 F. 646, 650 [C. C. A. 6]) unless all the substantial evidence indicates that the injury to the boy was proximately caused in whole or in part by his own contributory negligence. Upon its motion for a directed verdict the burden was upon appellee to establish this defense (Inland & Seaboard, etc., Co. v. Tolson, 139 U. S. 551, 557, 11 S. Ct. 653, 35 L. Ed. 270), and we think it failed. A boy 12 years of age may or may not as a matter of law be guilty of contributory negligence. The matter is to be determined upon a consideration not of his age only but of his experience, mental capacity, and the circumstances of the particular case. Washington & G. R. Co. v. Gladmon, 15 Wall. 401, 408, 21 L. Ed. 114; Erie R. Co. v. Weinstein (C. C. A.) 166 F. 271, 274; Felton v. Aubrey, supra; Force v. Standard Silk Co., 160 F. 992, 1005 (C. C).

█ We briefly state the determinative evidence from which we think fair-minded men might reasonably draw different conclusions.

The witness Mikesel, athletic director of the Glenview Community Club, testified that the boy was well above the average intelligence for one of his age, but he gives no basis for this assumption. The extent of his acquaintanceship with the boy does not appear. There is nothing to indicate that Leach, Jr., ever attended school. There is evidence that he and a number of his youthful companions had a playhouse or shack upon a lot immediately adjoining appellee's right of way; that they also played upon the right of way itself; that they had been in the habit for more than two years of climbing upon trains, one of their objects being to procure coal for a fire in the playhouse. In addition, there was evidence tending to show that adults likewise rode the trains at this point; that this custom was known to and passively acquiesced in not only by the trainmen, but by a watchman at the McLemore crossing; and that in one instance, at least, a brakeman told Leach that he might go upon a moving train for coal. The boy testified that he had ridden trains so long without objection from the trainmen that he did not realize there was danger except from falling

and that he took the position between the cars to prevent his father or mother from discovering and punishing him.

Upon this evidence we conclude that fair-minded men might reasonably differ upon whether the boy exposed himself to danger under the impulse of childish instincts, tempted perhaps by the acquiescence if not the consent of the trainmen; or whether upon the other hand he was fully capable of self-protection and failed to exercise it. The desire to ride as well as to play is natural to children and a jury might reasonably conclude that in mounting the train the boy was impelled by the same childish impulse controlling him and his fellows in maintaining the playhouse.

■ *As to the case of E. K. Leach, Sr.:* From the above résumé of the evidence, which we think is fairly stated, we find no conclusive proof that the father's indifference to the whereabouts and conduct of his child would bar his right of action as a matter of law.

Judgment reversed.