AMERICAN MAIL LINE, LTD., a Corporation, Appellant,

v.

TOKYO MARINE & FIRE INSURANCE CO., LTD., a Corporation, Appellee.

No. 16186.

United States Court of Appeals
Ninth Circuit.

Aug. 19, 1959.

Rehearing Denied Sept. 22, 1959.

---

Bogle, Bogle & Gates, M. Bayard Crutcher, Donald McMullen, Seattle, Wash., for appellant.

Evans, McLaren, Lane, Powell & Beeks, Martin P. Detels, Jr., W. T. Beeks, Seattle, Wash., Bigham, Englar, Jones & Houston, New York City, for appellee.

Before HEALY, ORR and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This litigation resulted from a fire in the cargo carried by the S. S. Oregon Mail in August, 1955. Tokyo Marine & Fire Insurance Co., Ltd., sued American Mail Line, Ltd., for the value of the non-delivered cargo which consisted of a quantity of barley in bulk. Mail Line answered and set up a statutory exemption from liability for fire as well as a consensual clearance. A cross-libel was also filed for the share of Mail Line of the General Average sacrifice. The barley was carried under an ocean bill of lading, and therefore Tokyo Marine was subrogated to the rights of cargo.

The trial court entered findings, conclusions and final decree, whereby it was determined that Mail Line was not entitled to an exemption by the fire statute and was not relieved of responsibility by the terms of the ocean bill of lading and that Tokyo Marine was not required to pay its share of the General Average. Appeal was taken therefrom.

■ The evidence was quite voluminous. Oregon Mail, a steamship owned by Mail Line, had barley loaded into its No. 1 lower hold and No. 1 tween deck at Vancouver, Washington. Subsequently, at Longview, Washington, lumber was loaded over the barley in No. 1 lower tween deck. The fuses which had been removed were snapped back into the light circuits for all the levels on No. 1 hold some time before noon on August 20, when the ship arrived at Vancouver, B. C. That evening the watch detected a slight smoke coming from the smoke detector in the bridge, wheelhouse. At 7:00 a. m., on Sunday morning, the ship arrived at Seattle. The Captain of Oregon Mail called Captain Greenwood, Port Captain for Mail Line, and informed him there were indications of a possible fire in No. 1 lower hold. Greenwood called certain surveyors to make an examination of the vessel. He then determined that the vessel should continue loading of cargo, including cargo in No. 1 hold. On August 22, the loading of cargo was continued until 1:00 p. m., when the discharge of cargo from this hold was be-

gun to permit observation of the barley. About 3:00 p. m., on August 24, the use of carbon dioxide as a smothering agent was begun by the use of the fixed system and a portable system rigged on the main deck. The application of the gas was continued at intervals on August 24 and 25. On the latter day the No. 1 hatch was uncovered and the barley was discharged in part. The court found that there was a fire in the barley cargo which existed from the time smoke was first observed on August 20. It found also that the barley was set afire as the proximate results of the acts and omissions of the officers and crew of the S.S. Oregon Mail in the negligent care and custody of the cargo in respect to the negligent burning and use of electric cargo lights in the No. 1 lower hold. The court found Mail Line negligent in delaying for an unreasonable time the use and application of carbon dioxide. The first point made by Mail Line is that there was no proof or basis for the ruling of the court that the fire could have been extinguished by the immediate use of carbon dioxide in the hold and that a prudent person using ordinary care would have taken such measures to extinguish the fire. The evidence has been carefully considered, and the findings of the trial court are accepted. They are not clearly erroneous and are based upon sufficient evidence. Mail Line objects that it was necessary to discharge the cargo before applying carbon dioxide, but this does not explain the delay between the time the Port Captain was notified until the time when the carbon dioxide was employed. Indeed, more cargo was loaded on top of the grain during the interval. The failure of the Port Captain to proceed within a reasonable time after the evidence of the smoke had been called to his attention is sufficient basis for the finding of the court.

■ Mail Line calls our attention to the fire statute, which reads:

"Loss by fire. No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner." 46 U.S.C.A. § 182.

It is claimed that this section completely exonerates and exempts the carrier from any liability whatsoever by reason of the destruction of the cargo by fire.

It is also contended that the bill of lading is also subject to the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1304(2) (b), which provides that neither carrier nor ship shall be responsible for damage arising or resulting from "(b) fire, unless caused by actual fault or privity of the carrier." We agree with Mail Line that "the exemptions under both acts are considered identical as to a shipowner-carrier." We only comment that we think the statement is not entirely accurate, but it serves for the purposes of this case.

Neither of the statutes above quoted has any effect upon the situation in the case at bar. The carrier is not being held liable for damage caused by the onset of fire and destruction caused thereby. The fire was started because of the negligence of the officers and crew of the ship. The carrier was not in privity with the officers and crew and cannot be held liable for their default in starting the fire. However, it is the duty of the carrier to use reasonable precaution to protect cargo from any type damage. The findings of the trial court, which we have confirmed, show that the carrier failed to use reasonable precaution and to take the measures which a reasonably prudent person would have taken to control the fire after it knew or should have known of the existence thereof in No. 1 hold. This duty exists irrespective of who was primarily responsible for the setting of the fire.

■ Tokyo Marine carried its burden and thus established the negligent failure to take proper precautions to stop a fire which had already been set. Unquestionably, damage has resulted proximately

from this negligence. It was incumbent upon the carrier to prove affirmatively any factor or substance which tended to minimize the damage. Inasmuch as there was no way of telling how much of the damage was caused before the Port Captain was notified, it is not unreasonable to assess the whole amount against the carrier. If the Port Captain had acted with reasonable promptitude, the carrier would have been exonerated and no question as to the amount of damage would have arisen, for there would have then been no liability. In view of the situation and the findings of the trial court, there is no defense available to the carrier based upon either of the statutes quoted.

■ It is a contention of Mail Line that the carrier is entitled to General Average contribution. But the trial court has found that the damage resulted from a cause for which the carrier itself is responsible. The bill of lading provides the liability of cargo to contribute in General Average is conditioned upon "the event of accident, danger, damage or disaster * * * for which or for the consequences of which the carrier is not responsible." The reading of this clause suffices to answer the contention of Mail Line in view of the findings of the trial court. The conclusion that the carrier was not entitled to contribution from General Average is affirmed.

In view of the holding above, we need not debate the question of whether there was an actual fire aboard the vessel. Tokyo Marine contends there was no fire. The trial court held as a fact that there was a fire. We accept the finding, but it is an irrelevant circumstance.

Affirmed.