HERSHEY CHOCOLATE CORPORATION, a Delaware corporation,
Libelant,

v.

THE S.S. ROBERT LUCKENBACH, her engines, tackle, apparel and furniture, Luckenbach Steamship Company, Inc., a Delaware corporation, and Albina Engine & Machine Works, Inc., an Oregon corporation, Respondents.

LUCKENBACH STEAMSHIP COMPANY, Inc., a corporation, Cross-Claimant,

v.

ALBINA ENGINE & MACHINE WORKS, INC., an Oregon corporation, Cross-Respondent (three cases).

LUCKENBACH STEAMSHIP COMPANY, Inc., a Delaware corporation, Cross-Claimant and Cross-Respondent,

v.

ALBINA ENGINE & MACHINE WORKS, INC., an Oregon corporation, Cross-Respondent and Cross-Libelant (three cases).

LONGVIEW FIBRE COMPANY, a corporation, and Waltham Bag and Paper Company, a corporation, Libelants,

v.

THE S.S. ROBERT LUCKENBACH, her engines, tackle, apparel and furniture, Luckenbach Steamship Company, Inc., a Delaware corporation, and Albina Engine & Machine Works, Inc., an Oregon corporation, Respondents.

ZELLERBACH PAPER COMPANY, a California corporation, and Northwest Grocery Company, an Oregon corporation, Co-Libelants,

v.

THE S.S. ROBERT LUCKENBACH, her engines, tackle, apparel and furniture, Luckenbach Steamship Company, Inc., a Delaware corporation, and Albina Engine & Machine Works, Inc., an Oregon corporation, Respondents.

PEYTON BAG COMPANY, a corporation, Libelant,

v.

THE S.S. ROBERT LUCKENBACH, her engines, tackle, apparel and furniture, Luckenbach Steamship Company, Inc.,

a Delaware corporation, and Albina Engine & Machine Works, Inc., an Oregon corporation, Respondents.

ALBINA ENGINE & MACHINE WORKS, INC., an Oregon corporation, Respondent and Cross-Libelant,

v.

LUCKENBACH STEAMSHIP COMPANY, Inc., a Delaware corporation, Cross-Respondent.

W. E. FINZER & COMPANY, a corporation, Libelant,

v.

ALBINA ENGINE & MACHINE WORKS, INC., a corporation, Respondent.

LUCKENBACH STEAMSHIP COMPANY, Inc., a corporation, Third-Party Respondent.

HEARST PUBLISHING COMPANY, Inc., (Pejepscot Paper Division) a corporation, Libelant,

v.

ALBINA ENGINE & MACHINE WORKS, INC., a corporation, Respondent.

LUCKENBACH STEAMSHIP COMPANY, Inc., a corporation, Third-Party Respondent.

Civ. Nos. 9997, 10001, 10002, 328–59, 335–59, 336–59.

United States District Court
D. Oregon.

March 10, 1960.

John Gordon Gearin of Koerner, Young, McColloch & Dezendorf, Portland, Or., for libelant.

Erskine Wood of Wood, Matthiessen, Wood & Tatum, Portland, Or., for respondents S. S. Robert Luckenbach and Luckenbach Steamship Co. ·

Gunther F. Krause of Krause, Lindsay & Nahstoll, Portland, Or., for respondent Albina Engine & Machine Works, Inc.

KILKENNY, District Judge.

Libelants were the owners of certain goods, wares and merchandise which had been delivered by them in good condition to Luckenbach Steamship Company, Inc., a corporation, (herein called "Luckenbach") for delivery to Portland, Oregon, in consideration of agreed freight and in accordance with the terms and conditions of certain bills of lading. Said property was loaded as cargo aboard the S. S. Robert Luckenbach, an ocean-going cargo vessel owned and operated by Luckenbach, and while aboard said ves-

sel in Portland, Oregon, received damage by fire or water while said vessel was undergoing repairs performed and to be performed at said city by respondent, Albina Engine & Machine Works, Inc., a corporation, (herein called "Albina"). While said vessel was undergoing said repairs, a fire broke out aboard the vessel, which, together with the water used to extinguish the same, caused the damage and loss of said cargo. At said time and place a section of the main fire line aboard the vessel had been removed. The fire aboard the vessel started as a result of sparks from welding by acetylene torch, which was performed by employees of Albina, who were performing the repairs within the scope of their employment.

1. Libelants claim cargo damage against both Albina and Luckenbach, charging Luckenbach with failure to provide a seaworthy vessel and with negligence, and charging Albina with negligence.

2. Luckenbach charges Albina with negligence and claims the benefit of what is commonly known as "The Fire Statute," Title 46 U.S.C.A. § 182, and Clause 13 of the bills of lading of libelants, embodying such statute. Luckenbach claims indemnity against Albina for any amount that it might have to pay libelants, or contribution to that amount, and is claiming damage against Albina for loss, damage and expense occasioned by the fire.

3. Albina is claiming indemnity or contribution against Luckenbach for any amounts it may have to pay libelants and is also charging Luckenbach with its bill for repairing the fire damage to the ship.

In the forenoon of April 2, 1958, the Chief Officer of the S. S. Robert Luckenbach reported to Luckenbach's Port Engineer, Mr. Sterling, that one of the lower rungs was missing from the iron ladder located in the after part of No. 5 hold, and he engaged Albina to install a new rung. At that time the lower portion of the after ladder, No. 5 hold, was obscured by cargo consisting of metal conduit pipe stowed in the after

part of No. 5 hold. The repair work to be done on the after ladder was a welding job and could not be done while longshoremen were working in the hold. The longshoremen ceased work after their meal hour at 6:00 p.m. and sometime thereafter, Albina's three-man welding crew entered No. 5 hold of the ship to do the welding job. Said crew consisted of Smith, a boilermaker foreman who was in charge, and two welders. The ladder in No. 5 hold requiring repair by replacement of a missing rung was not, in fact, the after ladder in that hold, as had been reported to Sterling, but in fact was the forward ladder in that hold. Sterling, having left the ship, did not know this. Between the time Sterling gave the order to repair the after ladder and the time the welders entered the hold, the cargo had been removed from around this ladder and around the forward ladder, sufficiently exposing both so that it was evident to the welders which ladder needed repair. Without further instructions, they proceeded to work on the forward ladder. Forward of this ladder and extending clear across the width of the ship was cargo consisting of several tiers of bales of burlap bags on the bottom and cardboard cartons of construction paper on top. The distance between this cargo and the forward ladder was from two to four feet. Smith placed two plywood "walk-boards" end to end up against the cargo to serve as a screen or partition between it and the ladder. On the port side of the ladder he stood a carton or box next to and up against the plywood partition and extending aft from it, substantially at a right angle. In addition, he laid a one-inch board athwartships against and along the bottom of the plywood partition. The place where Albina's men stood to perform the welding job on the forward ladder was clear of cargo. On the deck at this place was a "landing pad" which was a wooden floor covering the deck at this place used for landing cargo being loaded into the hold, thus protecting the deck from damage. Around the outside of this landing pad

was a ramp which sloped slightly to the deck, the slope of the forward edge of this ramp being toward the forward ladder. The missing ladder rung was the second or third one up from the bottom. A temporary rung was in position there and was removed by Smith. In the No. 5 hold there was a can, variously estimated to hold from three to five gallons, containing drinking water for the longshoremen, who had left it in the hold when they quit work. The can contained little water. The welding crew brought no fire-fighting or fire extinguishing equipment of any kind on board the ship. Albina's welder, Larson, struck an arc and began to burn off a small gob of metal where the old rung had been. Immediately, a spark or sparks or a piece of burning metal flew over the top of the partition and/or fell onto the forward ramp of the landing pad or upon the deck itself, rolled or bounced under or through the plywood partition, setting fire to the highly inflammable burlap bags.

Sterling, Luckenbach's Port Engineer, was the man in charge of repairs for respondents. The aft ladder which he ordered repaired was located approximately 40 feet from the forward ladder, which was being repaired when the fire occurred. Sterling had ordered the cargo removed from around the aft ladder. He had left the ship about 3:00 p.m. and did not return until after the fire had caused the damage.

Prior to the events in question, Albina, on orders from Sterling, had removed a section of the main line pipe, which supplied water to the ship's hydrants on deck. The pipe was removed for the purpose of repair. To make up this deficiency, the Chief Engineer of the vessel was ordered to connect the ship's water system with a Portland city water hydrant on the adjacent dock. An assistant engineer was instructed to perform this task, but neglected to do so. At the time of the fire, water was not available on the deck to be used in extinguishing the fire. The fire department was on the scene within a short period of time, from 3 to 15 minutes, and had water in the

hold within 4 minutes after arrival. The fire in No. 5 hold so heated the bulkhead between the No. 4 and No. 5 holds that there was danger of fire occurring in the No. 4 hold and the fire department poured water into that hold also, thus damaging additional cargo. Some of the ship's plates and the bulkhead between the No. 4 and the No. 5 holds were buckled and the ship sustained other damage, at least some of which was repaired by Albina. Sterling did not know of the failure to connect the city fire hydrant to the ship, nor that any welding was to be done on the forward ladder in No. 5 hold.

It is clear that Albina, in using the torch for the cutting and welding of metal in the presence of highly inflammable burlap bags, was undertaking an extremely dangerous operation. Even if Albina, by deliberate design, had attempted to create a hazardous fire condition, it could have made no improvement. The use of an acetylene torch, with its attendant heat and great danger, under these conditions, was nothing less than wanton conduct. No doubt, it created a situation where the rule of absolute liability should apply. Restatement of the Law, Torts, Absolute Liability, chap. 21.

However, I am not compelled to decide whether that doctrine is applicable to the facts in this case. The overwhelming weight of the evidence supports the libelants and Luckenbach's contentions that Albina was guilty of negligent conduct in using the acetylene torch under the conditions and circumstances then and there existing. The degree of care required in any given situation is that commensurate with the danger involved. Grand Trunk Railway Co. v. Richardson, 91 U.S. 454, 23 L.Ed. 356; Leach v. St. Louis-San Francisco Ry. Co., 6 Cir., 48 F.2d 722; Brown v. Standard Oil Co. of New York, 2 Cir., 247 F. 303.

The only case cited by Albina in support of its contention that it was not negligent is Rockwood & Co. v. American President Lines, D.C.N.J., 1946, 68 F. Supp. 224. In the Rockwood case the fire

was not discovered until 4½ hours after the acetylene burning operations were completed. The operators of the acetylene torch had with them a pail of water and a fire extinguisher, in addition to the asbestos sheeting which they used in building the protection wall. There was nothing in the case which would show that any spark or sparks entered the trunk in which the fire occurred. This case is not in point.

■ Although there is abundant evidence of lack of due care in other particulars as specified by libelants against Albina, said respondent contends that Code of Federal Regulations, Title 46, § 142.02–20, a Coast Guard regulation prohibiting repairs being undertaken in holds containing dangerous articles where such repairs involve welding or burning, is not applicable. Albina takes the position that this regulation applies only to a vessel and not to an independent contractor working with such equipment aboard the vessel. I think otherwise.

■ Likewise, Albina contends that § 16–2527 of the Police Code of the City of Portland requiring a suitable fire hose with nozzle attached, connected with a fire hydrant and a test made before burning or welding takes place on any vessel in the Port of Portland is unconstitutional, in that the field is pre-empted by Federal statutes and the Coast Guard regulations. I find no conflict between the regulations and the ordinance. The regulation, 46 CFR 146.01–12, specifically recognizes the right of local authorities to adopt regulations not inconsistent with those of the Coast Guard. Albina was negligent and caused the fire under specifications numbered 1, 2, 3, 4, 5, 6, 7 and 8.

Generally speaking, libelants urge that Luckenbach is liable on three general theories: (1) that it did not act as a reasonable, prudent person should have acted after it had knowledge of the fire; (2) that it acted in violation of said Code of Federal Regulations and said ordinance; and (3) that it did not remove the highly inflammable cargo from

around the forward ladder. In this connection we must keep in mind that Sterling ordered the repair to the ladder located in the after section of No. 5 hold and that the repair was undertaken at the forward ladder of No. 5 hold, around which was stowed some highly inflammable material and which was some 40 feet distant from the aft ladder.

Luckenbach contends that even though the statute and the ordinance might have been violated, there was no evidence that the managing officers or agents of the vessel were guilty of "personal negligence" and that the vessel is excused by reason of the provisions of the fire statute, Title 46, U.S.C.A. § 182 and Clause 13 of the bills of lading of each of the libelants, which incorporates the fire statute. The fire statute reads as follows:

"No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner."

■ Libelants claim that the fire statute does not apply under the facts of this case and that the negligence of Luckenbach in failing to provide water, in ordering the repairs in the hold where inflammable material was present, and in failing to remove the inflammable material was a contributory cause of the fire. The evidence is undisputed that Sterling, the engineer in charge of repairs, ordered the repairs at one place and without further instructions Albina made the repairs at another, where a great fire hazard existed. No such hazard existed at the place where the repairs were ordered. The evidence is undisputed that Sterling ordered the water lines connected with the hydrant on the dock. Failure to carry out this order was due to the negligence of one of the subordinates on the vessel. Radovich, the

Marine Superintendent, did not arrive on the vessel until 6:10 p.m. At that time, he did not know that the repairs were being made on a ladder other than pursuant to the original instructions. It was only after he saw the blaze in the hold that he recognized that repairs were being made on the other ladder. He immediately did everything within his power to control the fire. So, even though Radovich could be viewed as a managing officer or agent in charge of the vessel, the fire had been "caused" when he first noticed it. Under the evidence in the case I am of the opinion that Radovich was a subordinate and that his duties were very limited. The evidence is undisputed that he had nothing whatsoever to do with the repair of the ship. Here, the owner was repairing the system and, through its managing officer, had given specific orders to have equipment substituted and in place and ready to control a fire. Before the owner is liable under the fire statute, the fire must be caused "by the design or neglect of the owner." The word "design" contemplates a causative act or omission, done or suffered wilfully or knowingly by the shipowner. The Strathdon, D.C., 89 F. 374, 378. Of course, there is no evidence of the fire in this case being caused wilfully or knowingly by the shipowner or any of its officers or employees. The fire was caused by Albina.

The "neglect of the owner" mentioned in the statute means the owner's personal negligence, or in case of a corporate owner, negligence of its managing officers and agents as distinguished from that of the master or subordinates. Consumers Import Co. v. Kabushiki Kaisha, 320 U.S. 249, 252, 64 S.Ct. 15, 88 L.Ed. 30. It is well settled that a shipowner is not liable for damages resulting from fire unless the libelant proves that the cause of the fire was due to "design or neglect" of the owner and the burden is on the libelant to prove that the *neglect* of the owner did cause the fire. The Strathdon, supra; Fidel-

ity-Phenix Fire Insurance Co. v. Flota Mercante Del Estado, 5 Cir., 1953, 205 F.2d 886, 887. Upon showing that the cargo was damaged or destroyed by fire, Luckenbach brought itself within the exemption provided by the fire statute, unless the libelants go forward and show that the fire was caused by Luckenbach's personal neglect. Hoskyn & Co. v. Silver Line, 2 Cir., 1944, 143 F.2d 462, 463; The Cabo Hatteras, D.C., 5 F.Supp. 725, 728. Unseaworthiness does not prevent the application of the fire statute. Earle & Stoddart, Inc. v. Ellerman's Wilson Line, Ltd., 287 U.S. 420, 53 S.Ct. 200, 77 L.Ed. 403; Hoskyn & Co. v. Silver Line, supra. Neither is the benefit of the fire statute conditioned upon compliance with the safety act. 46 U.S.C.A. § 463\*; Fidelity-Phenix Fire Insurance Co. v. Flota Mercante Del Estado, supra; Automobile Insurance Co. v. United Fruit Co., 2 Cir., 1955, 224 F.2d 72, 75.

Libelants claim that the statutory fault doctrine established by The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148, applies to proof of the cause of a fire resulting in cargo damage. The Courts have held otherwise. Automobile Insurance Co. v. United Fruit Co., supra. Some cases would indicate a contrary conclusion. However, the statement on the subject in such cases is not supported by the authorities cited. For example, Verbeeck v. Black Diamond Steamship Corp., 2 Cir., 1959, 269 F.2d 68, 71.

It is contended that Judge Fee's decision in American Mail Line, Ltd. v. Tokyo Marine & Fire Insurance Co., Ltd., 9 Cir., 1959, 270 F.2d 499, casts liability on Luckenbach. There is no similarity in the facts of these cases. In the American Mail case, the captain of the vessel knew of the fire in the hold on August 20th. He continued to load cargo on that day, the 21st and the 22nd of August and on the 24th of August commenced the use of a smothering agent to control the fire, which had then been burning for four days. During all of that time the managing officers of the corporation

---

\* Now 46 U.S.C.A. § 481(a) (2).

knew of the existence of the fire. Judge Fee upheld the finding of the trial court that the owner failed to use reasonable precaution or to take measures which a reasonably prudent person would have taken to control the fire after it knew of its existence. Judge Fee held that the fire statute had no application for the reason that liability was being fixed by reason of the failure of the owner to control the fire. Here, immediate action was taken to control the fire. In this case, there is no evidence that anyone failed to use reasonable diligence after the start of the fire.

■ I am convinced that the fire statute is applicable and that Luckenbach and its superior officers were guilty of no negligence which *caused* the fire. Without question, the fire was caused by Albina. No one in charge for Luckenbach, nor any of its superior officers, had anything to do with the welding operation on the forward ladder. Albina claims that Radovich was a superior officer and one whose negligence would bind the ship. Nowhere does Radovich testify that he had any power or authority with reference to the repairing of the ship. In the direct question which was propounded to him, (Ex. 23, p. 101) he testified as follows:

"Q. Do you have any association with repairs to be effected by contractors or otherwise?
"A. No."

He testified that he arrived on the ship on the evening in question at about 5 or 10 minutes after 6:00 p.m. and that he went aboard for the purpose of observing the loading and unloading of the cargo. He had been directed to have some of the deep tanks in tween deck of No. 2 hatch discharged of cargo and cleaned relative to some ship repair work to be done. He was to have this work done by 8:30 a.m. in the morning. He didn't know whether any welding repair work was required on that repair job. (Ex. 23, p. 103). He had nothing whatsoever to do with the repair of the ship or with the removal of any cargo from around the ladder.

■ We now approach the question of Albina's liability to Luckenbach for the damage to the vessel caused by the fire. At the same time, we should consider the claim of Albina against Luckenbach for the reasonable value of the repairs which Albina made to the vessel after the fire. The "fire statute" which relieved Luckenbach from liability to libelants is of no help to Luckenbach on this problem. However, Albina impliedly contracted to do the repair job in a skillful, safe and workmanlike manner. In such case there is liability on the independent contractor to the owner of the vessel. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Crumady v. The Joachim Hendrick Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 413; Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. Where a shipowner and an independent contractor enter into a service agreement, the former is entitled to indemnification for all damages sustained as a result of the independent contractor's breach of its warranty of workmanlike service. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corporation, supra; Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., supra. The right to indemnity exists even though the vessel was unseaworthy at the time. Where the negligence of the independent contractor brings the unseaworthiness of the ship into play, such action on the part of the independent contractor amounts to a breach of workmanlike service and since that warranty was for the benefit of the vessel, the vessel is entitled to indemnity from the contractor. Crumady v. The Joachim Hendrick Fisser, supra. Albina argues that these cases should be distinguished in that they involve personal injuries to a stevedore, rather than property damage to a vessel. I am unable to distinguish the logic or the soundness of the reasoning in the stevedoring cases from what should be the logic and the soundness of the reasoning in arriving at a proper conclusion in this case. The

decisions in the stevedore cases control. I see no distinction between liability by way of indemnity and liability by way of direct damage or compensation.

Other legal questions raised by the briefs, with the possible exception of General Average, would seem to be academic.

Libelants are entitled to a decree against Albina for damage to cargo. Luckenbach is entitled to a decree against Albina for damage to the vessel. Albina is not entitled to a decree against Luckenbach for indemnity or for the value of services rendered in repair of the ship, other than those services performed and material furnished, if any, to Luckenbach for repair work independent of the fire in question.

Proctors may draft a supplemental pre-trial order outlining the issues on the question of damages. The question of offset in favor of Albina, on its repair bill against Luckenbach, shall be included in such supplemental order. Appropriate findings may be presented by proctors for Luckenbach and libelants after a decision on damages.