**Walter A. DZIEDZINA**

v.

**DOLPHIN TANKER CORP.,**

and

**Sinclair Refining Co.**

v.

**ATLANTIC PORT CONTRACTORS, INC., (Third-party Defendant), Appellee.**

**Dolphin Tanker Corp., Appellant.**

**No. 15440.**

United States Court of Appeals Third Circuit.

Argued Jan. 6, 1966.

Decided May 24, 1966.

---

1. Kentucky Rev.Stat. Title XL § 431.025(1) (1962).

Mark D. Alspach, Philadelphia, Pa. (William C. Schultz, Jr., Krusen, Evans &
Byrne, Philadelphia, Pa., on the brief), for Dolphin Tanker Corp., appellant.

John B. Brumbelow, Philadelphia, Pa. (Goncer M. Krestal, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa. on the brief), for Atlantic Port Contractors, Inc., appellee.

Before BIGGS, GANEY and FREED-MAN, Circuit Judges.

GANEY, Circuit Judge.

This civil action based upon diversity of citizenship was filed by the plaintiff, a ship-cleaner employed by Atlantic Port Contractors, Inc., (Atlantic) against Dolphin Tanker Corporation (Dolphin) to recover damages for injuries sustained while working for Atlantic aboard the SS. Edward L. Steiniger, a tanker owned by Dolphin.[1] Dolphin impleaded Atlantic as a third party defendant claiming indemnity for breach of Atlantic's warranty of workmanlike service. The jury returned a general verdict in favor of the plaintiff and Atlantic, and against Dolphin. The court below refused Dolphin's alternative motions for judgment n.o.v. or a new trial, and Dolphin appealed from that denial. Subsequently by stipulation with the approval of the Court, Dolphin satisfied the plaintiff's judgment; consequently, the present appeal involves only the indemnity issue between Atlantic and Dolphin.

The relevant facts are as follows: The vessel had run aground causing some hull damage with the result that there was excess water in the pump room and mud and water in the forepeak ballast tank. Dolphin through its port engineer Jackson hired Atlantic to clean and repair the vessel. Jackson testified that he exercised no supervision over the employees of Atlantic nor did he have authority to do so. His function was limited to telling O'Hara, Atlantic foreman, what was to be done. O'Hara was to have full control as to how the work was to be accomplished. During the course of the work, however, O'Hara told the plaintiff and two other

---

1. Sinclair Refining Co. was an original defendant, but plaintiff's action against it was dismissed during trial.

122

men (Kricken and Wiltsey) to report to Jackson. Jackson told these men to clean out the ballast tank. Since they had no hose, they were provided with one of the vessel's five hoses. Attempts to wash the tank from the deck were unavailing and the men were ordered into the tank by Jackson. It was then about 10:00 P.M. and the tank was not illuminated. The men requested light and boots; they were given a flash light and told "to get the hell down that hatch * * * here is a light and get". The men went down into the tank; the plaintiff holding the nozzle, stood on a ten-inch wide ledge; Kricken playing out the hose and holding the light, straddled the ladder above the plaintiff. After a short time, both men went back up onto the deck and made a second request for more light, boots and some planking to stand on. This request, as the original request, was made to both Jackson and O'Hara and was denied. The men were ordered back to work as before. Fifteen minutes later, a sudden increase in water pressure jerked the hose from Dziedzina's hands. The hose whipped about the tank out of control and the nozzle struck plaintiff before the

water could be turned off. Plaintiff was severely injured.

The crux of the dispute before this court, centers about the refusal of the District Court to accept three points for charge on the issue of indemnity offered by Dolphin. These points are set out below.[2]

The thrust of points eight and ten is directed at instructing the jury, that the indemnity implicit in the agreement between Dolphin and Atlantic can become operative in a situation of mutually shared fault. The language in which these points are couched is a correct statement of present Maritime Law; indeed this is conceded by Atlantic. However, the stevedore contends that these specific points were amply covered by the general instructions given to the jury. We are unable to so agree.

A review of the charge in its entirety convinces us that its effect must have been one whereby the jury could have found either of these parties liable, but under no circumstances could it have found both liable. This was not only a mistake of law, but one which was high-

2. Request for charge No. 8.
"If you find from the evidence that the services of Atlantic Port Contractors, Inc. were not performed in a careful and workmanlike manner and the failure to do so substantially contributed to the injury of the Plaintiff, then your verdict should be in favor of the Defendant herein, Dolphin Tanker Corp., and against Atlantic Port Contractors, Inc. in the third party action for all that the Plaintiff was awarded at your hands. Even though you find as a matter of fact that the fault on the part of the shipowner may have contributed to the injury in suit, it does not mitigate its claim over. It may recover in full on the warranty of workmanlike service. Ryan Stevedoring Co. v. Pan-Atlantic SS. Corp. (supra) [350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133]; Hershey Chocolate Corp. v. SS. Robert Luckenbach [D.C.], 184 F. Supp. 134, affirmed; Albina Engine and Machine Works [Inc.] v. Hershey Chocolate Corp., 295 F.2d 619 (C.A. 9 Cir. 1961); Casbon v. Stockard SS. Corp., 173 F.Supp. 845 (D.C.E.D.La.1959)."
Request for charge No. 9.
"If you do find from the evidence that there was an unseaworthy condition of the

vessel and that the ship cleaner, Atlantic Port Contractors, Inc., by its negligence 'brought that condition into play,' then the ship cleaner has breached its duty to perform in a safe and proper manner and is liable over the shipowner. Crumady v. [Joachim Hendrik] Fisser et al., 358 U.S. 423, 79 S.Ct. 445 [3 L.Ed.2d 413]."
Request for charge No. 10.
"If you find that an unsafe condition existed and the ship cleaner-employer, Atlantic Port Contractors, Inc., by its foreman or workmen knew of it, and continued its men working there in the forepeak ballast tank and that condition was a substantial factor in causing the injury, the shipowner, Dolphin Tanker Corp., is entitled to recover in its action over against the Atlantic Port Contractors, Inc., the Third Party Defendant, all that the Plaintiff is awarded at your hands. This still pertains even if the shipowner had the condition brought to its attention. Misurella v. Isthmian Lines, Inc., [D.C.], 215 F.Supp 857; DeGioia v. U. S. Lines [2 Cir.], 304 F.2d 421; Pettus v. Grace Line [Inc., 2 Cir.], 305 F.2d 151."

ly prejudicial to the interests of the original defendant Dolphin.

 The legal concept of indemnity in maritime actions is of rather recent vintage. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952); Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The nascent theory of indemnity still-born in *Halcyon* burst forth into bloom in *Ryan* and has grown to the point where a stevedore is liable for indemnity to the ship owner where a latent defect in the equipment of the stevedore, undiscoverable by due diligence is what constitutes the unseaworthy condition.[3]

Neither party disputes the fact that it was the sudden and unexplained increase in the water pressure coursing through the hose which was the last link in the chain of circumstances causing the injury. However, there is sufficient evidence spread upon the record to indicate that had the workplace been in a seaworthy condition the accident could have been avoided or at least greatly mitigated. As stated above, the men were permitted to work in the tank without proper lighting and without the requested planking. This substandard condition was known to Atlantic's foreman who did not take steps to rectify the deficiency as he should have.

Here specifically it was incumbent upon the court to point out that knowledge of the unseaworthy condition in Dolphin did not defeat its right of indemnity against Atlantic. The court also had the duty to explain to the jury that even if the stevedore acts in a non-negligent manner, his warranty of workmanlike service is breached where such actions make the unseaworthiness of the vessel operative. These principles of Maritime Law are unique and distinct from the Common Law standards and for this reason, the District Court must be explicit; such was not the case here.

Finally the court below failed to adequately cover in its general charge point #9 requested by Dolphin. The thrust of this point was aimed at making the jury aware that the right of indemnity exists where a preexisting condition of unseaworthiness was brought into active play by the action of the stevedore. The import of this point is obvious under the factual circumstances of this case. The jury should have been given the opportunity to decide whether or not it was the failure of Atlantic to properly instruct its employees to refrain from working in an obviously dangerous situation which was a contributory cause of this accident. This point was not covered adequately in the general charge given by the court below.

Therefore for the foregoing reasons, a new trial limited to the indemnity issue between Dolphin and Atlantic will be granted.

---

3. Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964).