Clinton **GILCHRIST**
v.
**MITSUI SEMPAKU K.K.**
v.
**JARKA CORPORATION.**
Civ. A. No. 31226.

United States District Court
E. D. Pennsylvania.
April 26, 1967.

962

Avram G. Adler, Philadelphia, Pa., for plaintiff.

George D. Sheehan, Philadelphia, Pa., for defendant.

F. Hastings Griffin, Jr., Philadelphia, Pa., for third-party defendant.

HIGGINBOTHAM, District Judge.

## MEMORANDUM OPINION

The above captioned action was brought by the plaintiff, Clinton Gilchrist, for injuries sustained by him in August, 1961 while employed by Jarka Corporation to unload sugar from the defendant ship. The ship, in turn, impleaded Jarka as a third party defendant.

Gilchrist was struck in the head by a sugar scraper, being used by a fellow employee next to him, as they were scraping sugar from the bulkhead of the ship. Plaintiff recovered a judgment against the ship. The ship, in turn, recovered that amount as indemnity from Jarka. The third-party defendant has now filed motions for judgment n. o. v. or, in the alternative, a new trial.

On a motion for a new trial or for judgment n. o. v., the facts must be taken in the light most favorable to the prevailing party. Plaintiff was struck on the head by a scraper being used by an associate who was working three or four feet away. This associate, a Mr. Mooreman, had complained to his foreman that the scraper was dull (N.T., p. 133) but was not supplied with another

(N.T., p. 150). The ship's boss, Mr. O'Brien, testified that his ship was similar to all other sugar ships turned over to him for discharge (N.T., pp. 412–413). On cross-examination, the plaintiff testified that there was nothing wrong with the way the sugar was stowed; however, that through the fault of Jarka's hatch boss the sugar was cut too low by the "clam digger" and the men were forced to work at a level too low for the scraping operation (N.T., pp. 182–186).

In its motion for a new trial, the third-party defendant raises issues which have been grouped by it in three broad areas. They are: (1) errors stemming from the substantive law of indemnity; (2) those arising out of the "procedural duty" which an indemnitee owes to an indemnitor; and (3) those having to do with the exclusion of alleged relevant evidence.

### DISCUSSION

### I.

■ The third-party defendant (hereafter Jarka) contends that the Court when charging the jury on the question of liability, committed error in that tort principles of causation were employed to define what was essentially a contract problem. Jarka relies on Italia Soc. Per Azioni, etc. v. Orgeon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964) to sustain its contentions:

> It further urges that negligence on the part of the stevedore company or its employees was present in all the above cases, and that the Court characterized the warranty in post-Ryan decisions as one entailing an obligation to perform with reasonable safety and reasonable competency. However, the stevedore's obligation established in Ryan was not merely an escape from the no-recovery consequences of Halcyon, as is evidenced by the fact that recovery of contribution between joint tortfeasors and recovery of indemnity for breach of warranty proceed on two wholly distinct theories and produce disparate results * * * Recovery

in contribution is imposed by law and is measured by the relative fault of the joint tortfeasors or shared equally between them, * * * ; *while recovery in indemnity for breach of the stevedore's warranty is based upon an agreement between the shipowner and stevedore and is not necessarily affected or defeated by the shipowner's negligence, whether active or passive, primary or secondary.* (376 U.S. 316 at pp. 321–322, 84 S.Ct. at p. 752; emphasis added.)

It is true that the Supreme Court has held that tort principles are not applicable in the area of ship-stevedore indemnification, however, I fail to see that the charge given in this case deviated from the holdings of that Court. The following passage from Jarka's brief is relevant here:

> For the stevedore's breach of warranty to make him responsible for indemnity, the liability of the ship must have been a result of the breach, or the breach must have "led to" the ship's liability. Ultimate liability is to rest "on the company whose default caused the injury". This is not, and by definition cannot be, combination stuff. (at p. 9).

Accordingly, when I charged the jury, that if the stevedore breached its warranty, and if that breach was a proximate cause of the plaintiff's injury, the ship was entitled to indemnification, that language was clearly consistent with the doctrine as defined by the Supreme Court. If a breach "led to", or is the cause of an injury it is clearly the proximate cause of said injury.

■■ The Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) recognized that the mere fact that a ship was negligent would not, of itself, bar indemnification by a stevedore who breached its warranty of workmanlike service. Thus, although the ship, in the instant case, may have been negligent it was not barred from a recovery where the stevedore's breach

of its warranty was a cause of the injury sustained here.

■■ The core of Jarka's contentions on this point lies in its disagreement with the Court's charge on latent defects. The jury was charged that, under certain circumstances, a shipowner can recover from a stevedore for breach of warranty even though the defect was latent, and, to that extent, the stevedore was without fault.[1] Immediately after that statement I continued to charge the jury as follows:

"The stevedore's implied warranty of workmanlike performance is sufficiently broad to make him liable where there is a failure to furnish reasonably safe equipment pursuant to its contract with the shipowner notwithstanding the fact that the stevedore was not negligent.

"Now let me give you an example of what I mean. Let's take the cable case again. Let's assume a stevedoring company brings onto a ship a cable to lift 3 tons and when it looked at it and inspected it in a reasonable manner they would have reason to believe that the cable would, in fact, lift 3 tons, but when it lifted 3 tons it snapped in the center and then only after it was broken it became obvious that some of the internal strands were defective and the cable broke. The stevedoring concern was not negligent because they inspected it, but, nevertheless, they could be liable because the cable was not reasonably safe equipment to do the job it was intended to be used for."

Jarka argues that the Court misinterpreted the language of *Italia,* supra, on this point. In *Italia,* the latent defect existed in a rope supplied by the stevedore, whereas in the present case, the defect—if it indeed was latent—existed in the condition of the sugar in the ribs of the ship. *Italia* should not be read so narrowly. Even where the "latent defect" was in the ship, if the stevedore should have been aware of its existence by virtue of its operations, and an injury resulted, a jury could validly find that its warranty of workmanlike service had been breached. The Supreme Court in *Italia* held as it did because it thought that the stevedore was in a superior position to detect the existence of the defect and prevent injury. This is the key. Thus, the fact that the sugar was already in the ship when stevedoring activities began would not insulate Jarka, if it was best situated to "adopt preventive measures and thereby reduce the likelihood of injury,"—and the jury could have so found.

■■ Jarka next contends that there was error in the Court's instruction to the jury that the stevedore would be liable if its actions "brought into play" the unseaworthiness of the vessel which led to the plaintiff's injury. This was not error. The language in question was first used by the Supreme Court in Crumady v. Joachim Hendrik Fisser, et al., 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 and has been adopted subsequently, by many courts. See Dziedzina v. Dolphin Tanker Corp., 361 F.2d 120 (3 Cir., 1966). The language "brought into

1. Unfortunately, the actual language used was "A shipowner can recover from a stevedore for a breach of warranty even though the injury causing the defect was latent and the stevedore was without fault." (N.T., p. 50—Charge of the Court.) While grammatically the word "defect" should have been used where the word "injury" was, and "injury" should have been used where the word "defect" was, counsel did not object to my inadvertent interposition of the words injury and effect. Counsel's objection was to the jury being informed of a shipowner's right to recover under certain circumstances even if the defect was latent and the stevedore was without fault. Counsel made no objection as to the substitution of the words "injury" and "defect":

"MR. GRIFFIN: I take an exception to Your Honor's charge on the latent condition to which the stevedore could be liable without fault on which it is not applicable to this case at all. * * * Latent conditions in ships' equipment are quite different from the Italia case which were latent conditions in the stevedore's equipment." (N.T., p. 58—Charge of the Court.)

play" recognizes that there can be, and are, circumstances where a ship may be unseaworthy but nevertheless a higher burden is placed on the stevedore because it had a better opportunity to prevent an ensuing injury. The language of the Court of Appeals for the Third Circuit in *Dziedzina,* on this point, is instructive:

> Here specifically it was incumbent upon the court to point out that knowledge of the unseaworthy condition in Dolphin did not defeat its right of indemnity against Atlantic. The court also had the duty to explain to the jury that even if the stevedore acts in a non-negligent manner, his warranty of workmanlike service is breached where such actions make the unseaworthiness of the vessel operative. These principles of Maritime Law are unique and distinct from the Common Law standards and for this reason, the District Court must be explicit; * * *. The thrust of this point was aimed at making the jury aware that *the right of indemnity exists where a preexisting condition of unseaworthiness was brought into active play by the action of the stevedore. The import of this point is obvious under the factual circumstances of this case. The jury should have been given the opportunity to decide whether or not it was the failure of Atlantic to properly instruct its employees to refrain from working in an obviously dangerous situation which was a contributory cause of this accident.* (361 F.2d 120, at p. 123; emphasis added.)

The stevedore also argues that the Court committed error in its supplementary charge to the jury on the question of the relevant law when both the ship and the stevedore are at fault. The essence of the stevedore's argument is that by its charge the Court, in effect, ordered a directed verdict in favor of the ship. This assignment of error is without foundation. The jury was instructed that where both parties were at fault, if the stevedore's breach was a contributing cause of the injury it was liable to the ship. The language of the Court of Appeals in *Dziedzina* clearly supports that instruction.

## II.

Counsel for Jarka contends that the shipowner violated its procedural duty as an indemnitor to the indemnitee. I have canvassed the evidence adduced by the stevedore and cannot agree with its contentions. I find that the pre-trial memorandum, filed on behalf of the ship, gave adequate notice to Jarka as to what defenses it should have been prepared to make, and what evidence it should have been prepared to refute. Nor do I accept the stevedore's arguments that the ship abandoned its defense of the action. The ship's position at trial, that the stevedore's actions were the cause of its unseaworthiness, was consistent with its posture before trial; consequently the stevedore was not prejudiced thereby.

## III.

Finally, the stevedore argues that the Court's refusal to permit it to show that it had not been impleaded by the ship until four years after the accident, and to read interrogatories and answers to show its lack of notice of the claim, was error. I am satisfied that Jarka had sufficient notice of the claim against it. Its employees were aware of the accident and Jarka had clear access to them. Counsel was supplied with transcripts of discovery proceedings, and was not denied access to investigatory reports.

Insofar as evidence was introduced into evidence pertaining to the failure of Jarka to supply its employees with hard hats, the short answer is that such testimony was given by Jarka's own witness and there was no objection to that testimony. In any event, I find that such testimony was consistent with the allegations in the pretrial memorandum and complaint.

My Order of April 3, 1967, provided that:

> "AND NOW, this 3rd day of April, 1967, the motion of Jarka Corpora-

966

tion for judgment n. o. v., or in the alternative, for a new trial is denied.

"Counsel for the defendant and the third-party defendant are directed to make every reasonable effort to come to an agreement on the question of counsel fees in this action. Should they be unable to agree, a separate jury trial on that issue in accordance with Rule 42(b) of the Federal Rules of Civil Procedure will be scheduled in this action. Said trial would be scheduled before the end of the present court term. A memorandum opinion will follow this order.

"BY THE COURT:

/s/ A. Leon Higginbotham, Jr.
                                    J.       "

This Memorandum Opinion is filed in accordance with that Order and I am still waiting to hear, formally, from counsel, whether they can agree on the issue of counsel fees. This issue has been severed for a subsequent trial, if necessary, should the parties be unable to come to agreement on the amount of legal fees and related costs to be recovered in the indemnity action.