**GESELLSCHAFT FUR GETREIDEHAN-DEL AG., Hugo Mathes & Schurr Kg., Herman Schrader, E. Kampffmeyer, Jurt A. Becher, Getreide-Import-Gesellschaft m.B.H., Plaintiffs,**

v.

**SS TEXAS, her engines, boilers, etc., and Wilh. Wilhelmsen d/b/a Wilhelmsen Line—Swedish American Line, Defendant.**

**Civ. A. No. 67–1416.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Jan. 15, 1970.

**600**

John B. Gooch, Jr., Montgomery, Barnett, Brown & Read, New Orleans, La., for plaintiffs.

Walter Carroll, Jr., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for defendant.

CASSIBRY, District Judge:

In this case owner's agents permitted a ship to leave the dock for sea with unexplained smoke in one of its holds. Later, at sea, a fire ensued causing severe damage to the cargo. Plaintiff sued for damages to its cargo, and defendant relies upon the defense found in the Fire Statute, 46 U.S.C. § 182, which provides:

"No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner."

Plaintiff responds that the fire was caused or contributed to by defendant's "design or neglect," which would deny defendant the protection of the statute. Defendant counters that the "design and neglect" contemplated by the statute must be committed by the "owner" and that neither the owner of the vessel in question here nor any of its executive officers, manager or superintendent were responsible for any such neglect. Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943); Hartford Accident & Indemnity Co. v. Gulf Refining Co., 230 F.2d 346 (5th Cir. 1956).

■■ I find that leaving port with unexplained smoke in a hold constituted neglect and fault on the part of Strachan Shipping Company. Further, Strachan, as general agent for the defendant, had sufficient authority so that its neglect or fault was the neglect or fault of defendant. This precludes defendant's use of the Fire Statute as a defense. Williams S. S. Co., Inc. v. Wilbur, et al., 9 F.2d 622 (9th Cir. 1925); Great Atlantic & Pacific Tea Co. v. Brasileiro (The Pocone), 159 F.2d 661 (2nd Cir. 1947); American Mail Line, Ltd. v. Tokyo Marine & Fire Ins. Co., Ltd., 270 F.2d 499 (9th Cir. 1959); Bank Line v. Porter, 25 F.2d 843 (4th Cir. 1928). Defendant was obligated to properly load, handle, stow, carry, keep, care for and discharge the cargo and is liable to plaintiff for the shortage and damage resulting from its breach of such duty.

■ Since defendant is liable to plaintiff's cargo of bulk soybean meal, plaintiffs have no obligation to contribute in General Average, and defendant's counter-claim for General Average contribution will be DISMISSED at defendant's cost. Gilmore and Black—The Law of Admiralty § 5–13.

A more detailed finding of fact is as follows:

On September 15, 1966, the S/S TEXAS, owned and operated by the defendant, arrived at the port of Mobile, Alabama, and moored at the grain elevator dock. At 0700 September 16, 1966, stevedores of Strachan Shipping Company commenced loading a bulk shipment of 3,471,080 pounds of soybean meal into the #4 cargo compartment of the vessel. The loading was completed at 0320 September 17, 1966, and the soybean meal filled the #4 hold and came within two to three feet of filling the #4 tween deck.

After the cargo of bulk soybean meal was aboard the S/S TEXAS, Strachan Shipping Company, the general agents for the defendant in the U.S.A., issued on behalf of the defendant, bills of lading 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13 showing that the 3,471,080 pounds of Soybean meal, in good order and condition, had been received on board the S/S TEXAS for delivery by the S/S TEXAS and defendant to Bremen, Germany. Bills of lading 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13 were negotiated in due course for valuable consideration to plaintiffs, who thereby acquired title to the bills of lading and the shipment of 3,471,080 pounds of soybean meal.

After the loading of the bulk soybean meal was completed, the S/S TEXAS shifted from the grain elevator to the general cargo dock (North Pier A) in the port of Mobile, and commenced loading general cargo in #2, #3 and #5 holds. At approximately 2015 on September 17, 1966, the Chief Officer reported to the Master of the S/S TEXAS that smoke was coming from the port ventilator servicing the #4 hold. The Master verified that smoke was coming from the ventilator, and at his request, the Chief Officer advised Burch, Strachan's loading superintendent, of the smoke, and asked that he get a marine surveyor. Burch contacted William J. Ford, Assistant Manager of Strachan, and advised him of the situation. Burch was told by Ford to request Captain Barry, Marine Surveyor, to come out to the ship. Captain Barry was then contacted by Burch, and met him on board the vessel about a half hour later. When Captain Barry arrived on board, the dampers of the vents for the #4 hold were closed and the vents were covered. Also, the hatch for the #4 hold was closed for sea. After discussing the situation with the Captain of the ship, the Chief Officer and Burch, Captain Barry entered the #4 tween deck through a manhole and crawled around a few minutes on top of the soybean meal. Captain Barry found smoke in the #4 hold, which made his breathing difficult, but did not find any flame or blaze. Captain Barry then returned to the main deck where he discussed his findings with the Captain, the Chief Officer and Burch. A little while later, Captain Barry made a second trip into the #4 tween deck, and still found smoke, but no flame or blaze. After his second inspection, Captain Barry again discussed his findings with the Captain, the Chief Officer and Burch, but no measures were taken to either determine or eradicate the cause of the smoke, except that the ventilators to the #4 hold were kept closed. Thereafter, the smoke detector for the #4 hold was supposedly checked more frequently than normal, but this was a useless gesture since the smoke detector had not shown smoke in the #4 hold at the time smoke was seen coming from the ventilator of the #4 hold. Burch reported Captain Barry's inspection of September 17, 1966 and the shipboard discussions with the Captain and Chief Officer to William J. Ford, Assistant Manager of Strachan Shipping Company, but no further action was taken by Strachan to determine the source of the smoke before departure from Mobile. After completion of loading of the general cargo, the vessel, with unexplained smoke in the #4 hold, departed Mobile for Savannah at 0840 on September 18, 1966.

On September 19, 1966, at 0900, smoke was seen coming from the #3 hold, but an inspection of the hold did not reveal any source for the smoke in that hold. However, about one hour later it was discovered that the smoke was getting into the #3 hold from the #4 hold, and the forward ventilator for the #4 hold was very hot. At this time, the vessel was off Dry Tortugas in the Gulf of Mexico, and the Captain sent telegrams to Strachan's office in New Orleans and Savannah, advising them of the smoke and heat in the #4 hold. All ventilators were closed and the ship continued to Savannah. The next day, September 20, 1966, the following telegram was sent by the Captain to the shipowners' office in Oslo:

"OVERHEATING IN SOYBEAN MEAL LOADED AT MOBILE FOR BREMEN IN HOLD NO. 4 FIRST TIME DISCOVERED IN MOBILE ABOUT 12 HOURS AFTER LOADING SURVEYOR ONBOARD BUT THE REASON FOR THE SMOKE DEVELOPMENT NOT FOUND THE SMOKE DEVELOPMENT INCREASING AGENTS IN NEW ORLEANS AND SAVANNAH INFORMED ETA LOS SAVANNAH 0500 TOMORROW MORNING."

The temperature of the ventilator for #4 hold continued to increase and smoke continued to be seen from the #4 hold until the vessel arrived at Savannah at 0725, September 20, 1966. The vessel was boarded by employees of Strachan Shipping Company, a marine surveyor, and representatives of the U. S. Coast Guard and the local fire department. At 0910 (for the first time since the smoke was seen on September 17, 1966 in Mobile) the $CO_2$ fire fighting equipment in the #4 hold was used but only in the #4 tween deck. Thereafter, the hatch for the #4 hold was opened, and it was decided to discharge the soybean meal in order to reach the source of the smoke. At 2020 and 2100 hours, $CO_2$ was released in the #4 lower hold, and at

0210 September 22, 1966, the stevedores got to the #4 hold where fire was found. The firemen used fog nozzles to extinguish the fire. Burned and scorched soybean meal was found in the #4 hold with most of the damage coming from the lower hold. Both the sound and the damaged cargo was discharged from the #4 hold and placed ashore. The discharging was completed at 0400 September 23, 1966. Thereafter a portion of the undamaged soybean meal was reloaded on board the vessel, and it departed from Savannah at 0405, September 24, 1966.

On October 8, 1966, the S/S TEXAS arrived at Bremen and, upon discharge, the soybean meal shipment was found to be short in weight and the balance of the shipment from the #4 hold was found to have serious burnt smell.

Judgment in accordance herewith will be prepared by plaintiff and submitted.